**ORIGINAL**

1   H. Larry Elam III (SBN 178836)
    LAW OFFICE OF H. LARRY ELAM III
2   2977 Ygnacio Valley Road, #267
    Walnut Creek, California 94598
3   Telephone: (925) 465-5151
    Facsimile: (925) 465-5152
4
5   Attorneys for Plaintiff MOHSEN REIHANIFAM

FILED

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
SANTA ANA

2013 FEB 14 PM 2:46

BY

6
7          IN THE UNITED STATES DISCTRICT COURT
8
          FOR THE CENTRAL DISTRICT OF CALIFORNIA
9
10        (SOUTHERN DIVISION – HONORABLE DAVID O. CARTER)

| | |
|---|---|
| 11  MOHSEN REIHANIFAM, and individual, | CASE NO.: SA12-CV- 0158D DOC (JPRx) |
| 12 | **FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL** |
| 13                 Plaintiff, | |
| 14        v. | 1. **RACE/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF FEHA;** |
| 15  FRESENIUS MEDICAL CARE NORTH AMERICA, BEN LIPPS, an individual, | 2. **HARASSMENT IN VIOLATION OF FEHA;** |
| 16  R. MAURICE POWELL, an individual | 3. **RETALIATION IN VIOLATION OF FEHA;** |
| 17 | 4. **FAILURE TO TAKE PREVENTATIVE STEPS IN VIOLATION OF FEHA;** |
| 18                 Defendants. | 5. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;** |
| 19 | 6. **BREACH OF CONTRACT;** |
| 20 | 7. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; AND** |
| 21 | 8. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |

BY FAX

23
24
25                                          **DEMAND FOR JURY TRIAL**
26
27
28

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

- 1 -
**FIRST AMENDED COMPLAINT**

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1    Plaintiff MOHSEN REIHANIFAM (hereinafter "Plaintiff"), as an individual, on

2 information and belief, complains and alleges as follows:

3                    **A.    JURISDICTION AND VENUE**

4    1.    The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1)

5 because Plaintiff and Defendant are citizens of different states and the amount in

6 controversy exceeds $75,000, excluding interest and costs.

7    2.    Venue is proper for all claims under 28 U.S.C. § 1391 (b)(2) because the

8 alleged unlawful employment practice was committed in this judicial district.

9                         **B.    THE PARTIES**

10    3.    At all relevant times herein, Plaintiff MOHSEN REIHANIFAM

11 ("Plaintiff") is an individual and at all times mentioned herein a citizen of the State of

12 California.

13    4.    Defendant FRESENIUS MEDICAL CARE NORTH AMERICA

14 ("FRESENIUS") is a business entity organized under the laws of the State of

15 Massachusetts.

16    5.    Defendant BEN LIPPS ("LIPPS") is a resident of the City of Newport

17 Beach, Orange County. At all times material LIPPS was the chief executive officer of

18 FRESENIUS.

19    6.    Defendant MAURICE POWELL ("POWELL") is an individual and a

20 resident of the State of Massachusetts. At all times material POWELL was an

21 employee of FRESENIUS.

22    7.    The conduct which the plaintiff complains of in this complaint, and which

23 is alleged below, was carried out by the defendants willfully, intentionally, and with

24 oppression, malice and fraud and was carried out with conscious disregard of

25 plaintiff rights as guaranteed by California law pursuant to which plaintiff is

26 entitled to an award of exemplary damages according to proof.

27                 **C.    EXHAUSTION OF ADMINISTRATIVE REMEDIES**

28    8.    On August 16, 2011, Plaintiff filed a complaint alleging race/national

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1   origin/ religion discrimination, failure to prevent discrimination, harassment, and
2   retaliation with the California Department of Fair Employment and Housing
3   ("DFEH") against Defendants. Plaintiff received a Right-to-Sue letter from the DFEH
4   dated August 16, 2011.

5       9.      By obtaining his Right-to-Sue letters from the DFEH, Plaintiff exhausted
6   all available and required administrative remedies. True and correct copies of his
7   Right-to-Sue letters are attached herewith as **Exhibit "A"**. True and correct copies of
8   the complaints are attached herewith as **Exhibit "B"**.

9                    D.    **DISCRIMINATION UNDER FEHA**

10      1.      Plaintiff was an employee within the meaning of California Government
11  Code § 12926(c) and belongs to a class protected under the statute.

12      2.      FRESENIUS is an employer within the meaning of California
13  Government Code § 12926(d).

14      3.      FRESENIUS, LIPPS and POWELL (hereinafter collectively known as
15  the "Defendants") intentionally discriminated against Plaintiff because of his
16  race/national origin in violation of FEHA by subjecting him to a continuous pattern of
17  discriminatory treatment, retaliatory actions, and harassment. Defendants
18  maintained, and failed to redress, cease or remedy the discriminatory work
19  environment.

20                       F.    **DAMAGES**

21      4.      As a direct and proximate result of defendant's conduct, which have
22  caused and will continue to cause Plaintiff to suffer damages, injuries and losses,
23  including, but not limited to, loss of earnings, legal costs and attorney's fees,
24  humiliation, loss of enjoyment of life, and emotional distress associated with the
25  continued loss of employment.

26              G.    **FACTS COMMON TO ALL CAUSES OF ACTION**

27      10.     Plaintiff is a 52 year-old of Iranian descent. He was employed by
28  Defendant for 24 years, beginning August 18, 1986, until his termination on August

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1  20, 2010.

2      11.      FRESENIUS holds a monopoly over kidney dialysis services and renal

3  care products. FRESENIUS manufacture and distribute a variety of dialysis products

4  and equipment, including dialysis machines, dialyzers and other dialysis-related

5  supplies. Plaintiff consistently performed at a superior level and was consistently

6  promoted to take on more responsibility. FRESENIUS also serves a large population

7  of federally funded end-stage renal disease ("ESRD') population.

8      12.      Plaintiff began his career with FRESENIUS in or about 1986, when it

9  was called Seratronic, Inc. ("Seratronic") in Concord, California as a field service

10  engineer. Plaintiff's job duties included diagnosing technical issues with dialysis

11  machines and related devices. Plaintiff also trained users on the use of dialysis

12  products and supported sales and marketing and nursing teams.

13      13.      During Plaintiff's more than 24 years of employment with FRESENIUS,

14  Plaintiff was in charge of almost every department in the FRESENIUS organization.

15      14.      In or about 1993 through approximately 1997, Plaintiff held the position

16  of Vice President of Operations for FRESENIUS. In that position he was responsible

17  for all aspects of operation, including, but not limited to being responsible for the

18  production facility and corporate headquarters, reducing production costs on key

19  products, increasing production volume, bringing new products into production,

20  managing purchasing, materials management and planning, production, engineering

21  and development, finance, technical and customer service, site management and

22  human resources. In addition, he worked closely with LIPPS, FRESENIUS' Chief

23  Executive Officer ("CEO"), to provide backup assistant for him during a major

24  acquisition/merger in 1996.

25      15.      In or about 1998, Plaintiff was promoted to the position of Vice President,

26  Dialysis Services Technology for FRESENIUS in Lexington, Massachusetts. In this

27  position he oversaw all technical services activities relating to the operation of all

28

- 4 -
**FIRST AMENDED COMPLAINT**

1  clinics in the United States, facility management as well as health, environmental
2  safety, and risk management.

3  16.  On or about July 26, 1999, after 13 years of stellar performance in a
4  variety of capacities for FRESENIUS in both products and services, Plaintiff was
5  promoted to the position of President of the Dialysis Services West Business Unit
6  supporting LIPPS. In this new position, Plaintiff had "profit and loss" responsibilities
7  in excess of $600 million dollars with 248 clinics in the Western half of the United
8  States including Hawaii and was responsible for all aspects of the business. Plaintiff's
9  business unit had high growth rate, the best cash collection, the best quality outcomes
10 and the largest numbers of Centers of Excellence within FRESENIUS.

11 17.  On or about August 28, 2002, Plaintiff complained in writing to LIPPS,
12 about the treatment on the Executive Board. Plaintiff pointed out that at a recent
13 meeting he raised an issue about employee morale and LIPPS responded in front of
14 the entire Executive Board that Plaintiff "had been in the sun too long" and that
15 Plaintiff was an "arguing Middle Eastern negotiator." Plaintiff further wrote about a
16 former peer, Dwight Morgan, who had recently been appointed as Chief Operation
17 Officer ("COO") and his improper business, ethical and financial practices. Plaintiff
18 expressed concerns to LIPPS that Mr. Morgan was providing inflated numbers to
19 Fresenius AG, FRESENIUS' German parent. Plaintiff expressed to LIPPS that Mr.
20 Morgan's lack of integrity would negatively impact FRESENIUS' growth, employee
21 morale, and quality of care.

22 18.  In response to Plaintiff's letter, LIPPS informed Plaintiff that he was
23 being transferred to a newly created position with FRESENIUS as the President of
24 Research and Development. This position was much smaller than his prior position.
25 Plaintiff believes that this demotion was in retaliation for his complaints. Plaintiff
26 complained to FRESENIUS human resources about his demotion.

27 19.  In or about 2003 to approximately 2009, Plaintiff held the positions of
28 President, Research and Development - North America and Business Development,

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

- 5 -
FIRST AMENDED COMPLAINT

1  wherein among other duties, he coordinated all product definitions, budget activities,
2  managed a large group of engineers, scientists and doctors, and managed the product
3  pipeline in both hemodialysis and peritoneal dialysis. He also was responsible for
4  business development activities within the products division. Despite his demotion,
5  Plaintiff continued to perform at a superior level as indicated by his performance
6  reviews. Plaintiff would now be obligated to report to POWELL as his direct report
7  supervisor.

8      20.    In or about April 2003, FRESENIUS presented Plaintiff with a written
9  employment contract, which provided, among other things, that upon termination,
10  with or without cause, Plaintiff would receive a payment equal to 24 months of base
11  salary in effect at the time of his termination, bonus and benefits. In addition,
12  pursuant to FRESENIUS' policy that was in effect during the entirety of his
13  employment, upon termination he would have also been entitled to reimbursement of
14  his business related expenses. This employment contract renewed annually until
15  FRESENIUS elected not to renew it in 2009.[1] Attached hereto and incorporated
16  herein by this reference as Exhibit C is a true and correct copy of the April 2003
17  Employment Contract.

18      21.    Despite being moved to a smaller role, Plaintiff soon learned that he
19  would continue to be plagued by the same problems that he faced when was the
20  President of the Business Unit, when he complained to POWELL about things like
21  "serious health and legal issues with line disconnects and fatal bleeding of patients."
22  Rather than respond constructively to Plaintiff's concerns, LIPPS and POWELL chose
23  to isolate Plaintiff and keep him out of the loop. Other safety issues raised by
24  Plaintiff, included, but were not limited to issues involving patient reaction to EBEAM
25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
27  [1] In or about December 2008, the employment contract was amended. Attached hereto
    and incorporated herein by this reference as Exhibit D is a true and correct copy of the
28  December 2008 Employment Contract.

1    as well as quality issues with the Liberty Cycler, all of which were also raised by other
2    employees. Safety issues were also raised by other employees and customers.

3        22.     In or about July 2005, Plaintiff met with POWELL and discussed how he
4    [Plaintiff] believed he had been mistreated, making reference to the fact that during a
5    presentation the prior year that the corporate employment lawyer had referred to
6    FRESENIUS as "not a minority friendly company" and that "Fresenius does not treat
7    minorities correctly." Plaintiff also reminded POWELL that at the National Sales
8    meeting that he [POWELL] pinched Plaintiff's butt numerous times on the dance floor
9    in front of others and later that night in POWELL's private suite he said "I did not
10    know Iranians could even dance."

11        23.     POWELL referred to FRESENIUS as a "white male club", Plaintiff
12    believed that POWELL's comment was meant to convey to him that he was no longer
13    welcome because he was not a white male.

14        24.     POWELL made additional rude and insensitive comments that
15    referenced Plaintiff's race and/or national origin, including, but not limited to:

16        a.       Another member of FRESENIUS' senior management made
17    disparaging comments about African-Americans (Obama in particular) and Muslims
18    and many other racially insensitive remarks about office staff in Plaintiff's presence,
19    which emphasized the point that FRESENIUS was becoming a "white male club."

20        b.       POWELL fostered an environment of racial intolerance
21    wherein managers reporting to him felt it acceptable to make a comment during a
22    team meeting on how to deal with the Iraq war by "carpet bombing the hell out of the
23    whole area and start over." Plaintiff was born in the area and still has family
24    members in the area and he found these comments particularly hurtful.

25        c.       POWELL created an atmosphere wherein Caucasian team
26    members felt it acceptable to tease Plaintiff for the way he pronounced "three" with
27    his accent it sounded like "tree." Plaintiff believed these comments were made
28    specifically to minimize him because of he was not Caucasian, but Middle Eastern.

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

- 7 -
**FIRST AMENDED COMPLAINT**

d.          POWELL excluded Plaintiff from meetings and key activities involving the department Plaintiff was responsible for supervising – R&D – despite the fact that Plaintiff had traditionally been involved in these meetings and activities. Plaintiff believed that this was POWELL's way of proving to him that FRESENIUS was becoming a "white male club."

25.     Plaintiff sought to break this pattern of harassment by requesting that POWELL consider sensitivity training and awareness for FRESENIUS senior management. POWELL never addressed Plaintiff's requests, and Plaintiff continued to be marginalized and isolated by POWELL and LIPPS and some of those reporting to each of them respectively.

26.     In or about September 2007, the minimization of Plaintiff by Defendants continued. He was notified that a new Sr. Vice President of Business Development, Renal Therapies Group had been selected and announced – a white male. In addition, Plaintiff learned that an employee who had been reporting to him would now be reporting to the newly announced Sr. Vice President of Business Development, Renal Therapies Group. Plaintiff was dismayed that he learned of these new personnel changes were made via corporate announcement. Plaintiff again complained about this treatment to LIPPS expressing feelings of being humiliated, stressed, losing sleep, even chest pains. Plaintiff also reiterated to LIPPS that this conduct was a consistent pattern with POWELL over the prior three to four years.

27.     In 2008, Plaintiff contacted the Sr. Vice President, Human Resources, Mr. O'Connell, for Defendant FRESENIUS and informed him about the atmosphere of racial discrimination, harassment and retaliation that existed in FRESENIUS' senior management. Plaintiff provided specific incidents to include, but not limited to those listed above.

28.     In or about October 2008, Plaintiff believed POWELL was a in agreement with actions that Plaintiff believed would amount to improper accounting practices. Plaintiff vehemently disagreed with POWELL's position and argued that

- 8 -

**FIRST AMENDED COMPLAINT**

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1   the integrity and high moral values that FRESENIUS had stood for in the past should

2   continue in the future. Plaintiff was expressed concerns with patient safety and he

3   voiced these concerns to POWELL.

4       29.     In February 2009, in response to Plaintiff's continued complaints about

5   unlawful employment practices, financial irregularities, concerns for safety and

6   quality controls in the products and verbal opposition to unlawful, discriminatory

7   practices and harassment, Plaintiff was removed by LIPPS and POWELL from his

8   position as head of Research and Development and demoted to the position of a Senior

9   Advisor on Advanced Renal Products. In addition, Defendants notified Plaintiff that

10  his employment contract would not be renewed. However, Plaintiff's employment was

11  not terminated at this time. In Plaintiff's 24 plus years of employment with

12  FRESENIUS, he was familiar with the practice of moving senior managers to advisor

13  positions, which signaled that the employee would soon be pushed out of the

14  organization.

15      30.     In or about February 2009, Plaintiff began working for LIPPS in his new

16  role as senior advisor after being removed from his position as President of R&D.

17  LIPPS asked Plaintiff to attend to and consider acquisition of a company in Lake

18  Forest, California by the name of Xcorporeal Alliances, Inc. ("XA") with an initial

19  meeting attended by LIPPS, Plaintiff and the management of XA in March of 2009.

20  Plaintiff took on the project and worked full-time taking care of all aspects of the

21  acquisition. Plaintiff closed the deal in early 2010 and managed all aspects of the

22  acquisition. One of the components of the contract called for the setup of a joint

23  venture by FRESENIUS and a contribution of $1 million into XA to go out and raise

24  money to develop one of the products – a Wearable Artificial Kidney ("WAK").

25  Plaintiff was informed that Dr. Victor Gura, an employee of the acquired company,

26  was going to have a role in the new joint venture as the medical expert.

27      31.     Plaintiff is informed and believes that at some point LIPPS decided that

28  the setting up the joint venture was not a good idea for FRESENIUS because LIPPS

- 9 -
**FIRST AMENDED COMPLAINT**

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1  did not want to have to consolidate the joint venture results with FRESENIUS'

2  finances and therefore LIPPS decided that a standalone company would be better for

3  FRESNIUS.  Eventually the transaction was set up as an off-balance-sheet

4  transaction to avoid having to consolidate Fresenius' and the joint venture's finances.

5  Plaintiff believes that setting it up this way was in violation of SEC regulations.

6       32.  In or about May 2009, Plaintiff again contacted Mr. O'Connell and

7  complained that Plaintiff believed that he had been pushed out of his position in

8  response to his complaints about LIPPS and POWELL's conduct since 2005.

9       33.  In or before August 2009, Mr. O'Connell was tasked with the duty of

10  working out the terms of a new employment contract between Plaintiff and

11  FRESENIUS.  The prior employment agreement commenced in April 2003 and was

12  amended on December 23, 2008.  In regards to that negotiation, Plaintiff

13  communicated to Mr. O'Connell that he [Plaintiff] wanted to ensure that the provision

14  in this employment contract would continue to include the guarantee of 24 months of

15  Plaintiff's annual salary upon termination.  Mr. O'Connell responded that the

16  proposals for a new agreement would include the 24 months of salary if Plaintiff was

17  terminated.

18       34.  Despite Plaintiff's many specific complaints, he is not aware of any

19  investigation initiated by FRESENIUS.  The negotiations for a new employment

20  contract appeared to be going nowhere and Plaintiff soon realized that he was no

21  longer wanted as an employee by the defendants.

22       35.  Despite the work to finalize a new employment agreement continued, the

23  isolation, marginalization, and humiliation of Plaintiff continued at the hands of

24  POWELL.  In fact, Plaintiff wrote LIPPS in 2009 and 2010 complaining about

25  POWELL's continuing efforts to harass, discriminate and retaliate against him.

26       36.  LIPPS requested that Plaintiff set up a standalone company.  Plaintiff

27  did so in March 2010.  The original name was RenaCor which later was changed to

28  NephCor because RenaCor was not available.  LIPPS also requested that Plaintiff list

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1    his [Plaintiff's] name as the chief executive officer in the articles of incorporation and
2    take ownership of the half of the issued shares in the company. NephCor had 15
3    Million shares with 10 million common and 5 million preferred. Half of the 1 million
4    issued shares (e.g., 500,000) were given to Plaintiff and the other 500,000 shares were
5    given to Dr. Gura. LIPPS later informed Plaintiff that NephCor was going to be his
6    only job option, despite the fact that Plaintiff believed that there were multiple
7    positions available within FRESENIUS that Plaintiff was qualified for including the
8    running of the newly acquired business. Instead the position was given to a friend of
9    LIPPS who happened to be Caucasian.

10         37.    In July 2010, FRESENIUS and NephCor entered into a contribution,
11    license and collaboration agreement that involved certain patent and related
12    intellectual property rights owned by FRESENIUS. Under that agreement,
13    FRESENIUS granted NephCor an exclusive license of these patent and related
14    intellectual property rights for the purpose of developing renal products.

15         38.    On or about August 20, 2010, after 24 years of dedicated and loyal
16    service, Plaintiff was abruptly terminated from his position at FRESENIUS.
17    Plaintiff's termination was not based on performance. In fact, he had an unblemished
18    record and his performance evaluations were rated as superior.

19         39.    Despite the discriminatory treatment from FRESENIUS, Plaintiff
20    continued to work on getting a licensing agreement and contract between
21    FRESENIUS and NephCor, which was finalized and signed in July 2010. Plaintiff's
22    employment with FRESENIUS was terminated shortly after on August 20, 2010
23    without any explanation.

24         40.    The discriminatory and harassing treatment against Plaintiff continued,
25    including but not limited to the slandering of Plaintiff by LIPPS to officers at NephCor
26    continued. In September 2010, Plaintiff was improperly removed as chief executive
27    officer, chief financial officer and president of NephCor, without cause and in violation
28    of the applicable bylaws.

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1    41.    Plaintiff believes that he was terminated from FRESENIUS because he
2  opposed unlawful employment practices, spoke out against financial irregularities,
3  stood up for safety and quality in the products and opposed unlawful, discriminatory
4  practices, including, but not limited to harassment towards himself and other
5  minorities.

6    42.    During his employment, Plaintiff also witnessed bias towards other
7  minorities as well as direct comments from the upper management regarding how to
8  deal with regional issues such as dealing with the Middle East by "carpet bombing the
9  whole region." Plaintiff documented and shared his concerns with the Human
10  Resources department and upper management including the Chief Executive Officer
11  of the company as well as The Management Board of the global company (Fresenius
12  AG) in Germany to no avail.

### FIRST CAUSE OF ACTION
### RACE/NATIONAL ORIGIN DISCRIMINATION
### VIOLATION OF FEHA
#### (AGAINST FRESENIUS)

17    43.    Plaintiff incorporates and realleges by reference all previous paragraphs
18  of this Complaint as if fully set forth herein.

19    44.    At all times mentioned herein, Plaintiff was an employee covered by
20  California Government Code Section 12940(a), which prohibits employers from
21  harassing employees on the basis of race and national origin.

22    45.    At all times relevant during Plaintiff's employment with Defendants,
23  Plaintiff was subjected to illegal discrimination on the basis of his race and national
24  origin, both directly and indirectly, by his supervisors, POWELL and LIPPS.

25    46.    Defendants' discriminatory actions against Plaintiff, as alleged above,
26  constituted unlawful discrimination in employment on the basis of Plaintiff's race and
27  national origin, in violation of Government Code Section 12940(a).

28    47.    As a direct, foreseeable, and proximate result of defendants' wrongful

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1   termination of Plaintiff has suffered and continues to suffer injury to his professional
2   reputation. Plaintiff has lost and will continue to lose past and future income and
3   benefits, promotions, stock options, and other benefits of employment, and has
4   suffered and continues to suffer humiliation, embarrassment, mental and emotional
5   distress, and discomfort all to Plaintiff's damage in an amount in excess of the
6   jurisdictional limit, the precise amount of which will be proven at trial. In addition,
7   Plaintiff's efforts to mitigate his damages have been hindered due to the monopoly
8   held by FRESNIUS in the renal dialysis market.

9       48.     Plaintiff is informed and believes, and thereon alleges, that Defendants,
10  and their managing agents, committed the acts described herein deliberately,
11  callously, maliciously, fraudulently and in an oppressive manner intended to injure
12  Plaintiff and that such improper motives amounted to malice and a conscious
13  disregard of Plaintiff's rights as set forth above. Therefore, Plaintiff is entitled to an
14  award of punitive damages from Defendants in an amount according to proof at trial.

15      49.     As a result of the discriminatory conduct of Defendants, and each of
16  them, and their failure to provide a work environment free of discrimination, as
17  alleged herein, Plaintiff is entitled to costs of suit, including reasonable attorney's fees
18  pursuant to Government Code Section 12965.

19                          **SECOND CAUSE OF ACTION**
20                  **HARASSMENT IN VIOLATION OF FEHA**
21                         (AGAINST ALL DEFENDANTS)

22      50.     Plaintiff incorporates and realleges by reference all previous paragraphs
23  of this Complaint as if fully set forth herein.

24      51.     As articulated more fully above, Plaintiff was subjected to unwanted
25  harassing conduct by the Defendants on the basis of race and/or national origin in
26  violation of Government Code § 12940(j)(1).

27

28

52. The harassing conduct of Defendants was severe, widespread, and/or persistent as to alter the conditions of the employment and to create what Plaintiff and a reasonable person would consider a hostile or abusive work environment.

53. Plaintiff's supervisors LIPPS and POWELL engaged in the harassing conduct and/or knew or should have known of the harassing conduct and failed to take immediate and appropriate corrective action.

54. Defendants knew or should have known of the harassment, yet failed to promptly and appropriately investigate the harassment.

55. Defendants' harassing conduct was a substantial factor in causing harm to Plaintiff, including but not limited to: past and future income and benefits, promotions, stock options, and other benefits of employment, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort all to Plaintiff's damage in an amount in excess of the jurisdictional limit, the precise amount of which will be proven at trial. In addition, Plaintiff's efforts to mitigate his damages have been hindered due to the monopoly held by FRESNIUS in the renal dialysis market.

56. As a direct and proximate cause of the acts alleged above, Plaintiff has had to hire the services of an attorney. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees, and is entitled to an award of attorneys' fees and costs pursuant to Government Code § 12965(b). Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this Complaint when the amounts are more fully known.

57. As more fully set forth above, the harassment by Defendants was committed intentionally, maliciously, wantonly, oppressively, and fraudulently with a conscious disregard of Plaintiff's rights and with the intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff, which acts amounted to oppression, fraud, and malice, as described in *California Civil Code* § 3294. Plaintiff is therefore entitled to punitive or exemplary damages in an amount sufficient to

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

- 14 -

1  punish and make an example of Defendants. The conduct of Defendants, and each of
2  them, was clearly malicious, oppressive, and despicable.

### THIRD CAUSE OF ACTION

### RETALIATION FOR COMPLAINTS OF UNLAWFUL DISCRIMINATION/ HARASSMENT IN VIOLATION OF FEHA

#### (AGAINST FRESENIUS)

7  58.    Plaintiff incorporates the above paragraphs as if they were fully set forth
8  herein.

9  59.    At all times herein mentioned, Government Code § 12940 *et seq.* was in
10  full force and effect and was binding on Defendants, as Defendants regularly employed
11  five or more persons. Government Code § 12940(h) makes it unlawful for any person
12  to retaliate against an employee who has opposed a discriminatory practice.

13  60.    At all times herein relevant there was an employer/employee relationship
14  between the plaintiff and the defendants.

15  61.    Plaintiff complained about the discrimination and harassment to LIPPS,
16  POWELL and FRESENIUS' Human Resources Department, on numerous occasions
17  about the discrimination and harassment.

18  62.    Defendants, and each of them, retaliated against Plaintiff for making the
19  aforementioned complaints in the form of further harassment.

20  63.    Plaintiff's complaints were a motivating factor in defendants' decision to
21  subject Plaintiff to continued harassment, demotion and termination.

22  64.    As a direct, foreseeable, and proximate result of defendants' wrongful
23  termination of Plaintiff has suffered and continues to suffer injury to his professional
24  reputation. Plaintiff has lost and will continue to lose past and future income and
25  benefits, promotions, stock options, and other benefits of employment, and has
26  suffered and continues to suffer humiliation, embarrassment, mental and emotional
27  distress, and discomfort all to Plaintiff's damage in an amount in excess of the
28  jurisdictional limit, the precise amount of which will be proven at trial. In addition,

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

- 15 -

1  Plaintiff's efforts to mitigate his damages have been hindered due to the monopoly

2  held by FRESNIUS in the renal dialysis market.

3  65. As a direct and proximate cause of the acts alleged above, Plaintiff has

4  had to hire the services of an attorney. Plaintiff has incurred and continues to incur

5  legal expenses and attorneys' fees, and is entitled to an award of attorneys' fees and

6  costs pursuant to Government Code § 12965(b). Plaintiff is presently unaware of the

7  precise amount of these expenses and fees and prays leave of court to amend this

8  Complaint when the amounts are more fully known.

9  66. The conduct of Defendants and each of them as described above was

10 malicious, fraudulent, and/or oppressive and done with a willful and conscious

11 disregard for Plaintiff's rights and for the deleterious consequences of Defendants'

12 actions. Defendants and each of them, and their agents/employees or supervisors,

13 authorized, condoned, and ratified the unlawful conduct of each other. Consequently,

14 Plaintiff is entitled to punitive damages against each of said Defendants.

**FOURTH CAUSE OF ACTION**

**FAILURE TO PREVENT HARASSMENT/DISCRIMINATION**

**IN VIOLATION OF FEHA**

(AGAINST FRESENIUS)

19 67. Plaintiff incorporates and realleges by reference all previous paragraphs

20 of this Complaint as if fully set forth herein.

21 68. At all times material hereto, Defendants were employers within the

22 meaning of California Government Code Section 12926(d), and as such were

23 prohibited from discriminating and harassing in employment decisions, including

24 layoffs and terminations, on the basis of an employee's race and/or national origin.

25 69. Defendants failed to prevent discrimination and harassment against

26 Plaintiff in that Defendants ridiculed Plaintiff on the basis of his race and/or national

27 origin, and did not take any action to remedy the overt discrimination and harassment

28 against Plaintiff.

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

- 16 -

FIRST AMENDED COMPLAINT

70. As a direct, foreseeable, and proximate result of defendants' wrongful termination of Plaintiff has suffered and continues to suffer injury to his business and professional reputation. Plaintiff has lost and will continue to lose past and future income and benefits, promotions, stock options, and other benefits of employment, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort all to Plaintiff's damage in an amount in excess of the jurisdictional limit, the precise amount of which will be proven at trial. In addition, Plaintiff's efforts to mitigate his damages have been hindered due to the monopoly held by FRESNIUS in the renal dialysis market.

71. As a further proximate result of Defendants' actions, and each of them, Plaintiff has suffered, and continues to suffer, severe and lasting humiliation, embarrassment, and mental anguish, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount according to proof at trial.

72. Plaintiff is informed and believes, and thereon alleges, that Defendants and their managing agents, committed the acts described herein deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure Plaintiff, and that such improper motives amounted to malice and a conscious disregard of Plaintiff's rights as set forth above. Therefore, Plaintiff is entitled to an award of punitive damages from Defendants in an amount according to proof at trial.

73. As a result of the discriminatory conduct of Defendants, and each of them, in their failure to provide a workplace free of discrimination, as alleged herein, Plaintiff is entitled to costs of suit, including reasonable attorneys' fees pursuant to Government Code Section 12965.

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

- 17 -
FIRST AMENDED COMPLAINT

1

2

3

## FIFTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

#### (AGAINST FRESENIUS)

4      74.    Plaintiff incorporates the above paragraphs as if they were fully set forth

5    herein.

6      75.    Plaintiff alleges that Defendants termination of Plaintiff was in violation

7    of the public policy as expressed both in California Constitution Article I, section 8

8    which prohibits discrimination against employees and Section 12940 *et seq.* of the

9    Government Code.  The above described conduct of Defendants also constitutes

10    race/National Origin, harassment and retaliation, and wrongful termination of

11    Plaintiff in violation of public policy embodied in the FEHA.

12      76.    As a direct, foreseeable, and proximate result of defendants' wrongful

13    termination of Plaintiff has suffered and continues to suffer injury to his professional

14    reputation.  Plaintiff has lost and will continue to lose past and future income and

15    benefits, promotions, stock options, and other benefits of employment, and has

16    suffered and continues to suffer humiliation, embarrassment, mental and emotional

17    distress, and discomfort all to Plaintiff's damage in an amount in excess of the

18    jurisdictional limit, the precise amount of which will be proven at trial.  In addition,

19    Plaintiff's efforts to mitigate his damages has been hindered due to the monopoly held

20    by FRESNIUS in the renal dialysis market

21      77.    Because the acts taken toward Plaintiff were carried out by managerial

22    employees acting in a deliberate, cold, callous, malicious, oppressive, and intentional

23    manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of

24    punitive damages against defendant employers in an amount appropriate to punish

25    and make an example of defendants.

26      78.    The acts, conduct and negligence of defendants caused Plaintiff to suffer

27    emotional distress and, as a result thereof, Plaintiff has suffered damages as set out in

28    this complaint in amounts to be proven at the time of trial.

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1  79.    Plaintiff has incurred and continues to incur legal expenses and attorney
2  fees. Plaintiff is presently unaware of the precise amount of said expenses and fees,
3  and prays leave of Court to amend this complaint when said amounts are more fully
4  known.

## SIXTH CAUSE OF ACTION
## FOR BREACH OF CONTRACT
### (AGAINST FRESENIUS)

8  80.    Plaintiff incorporates and realleges by reference all previous paragraphs
9  of this Complaint as if fully set forth herein.

10  81.    Plaintiff has performed all conditions, covenants and promises required
11  by him on his part to be performed in accordance with the terms of the written
12  employment agreements, dated April 2003 and December 23, 2008.

13  82.    Defendants, and each of them, have failed and refused, and continue to
14  refuse, to tender their performance as required by the contract. This includes that
15  defendants breached the contract beginning on or about February 17, 2009, causing
16  permanent harm to the plaintiff.

17  83.    Defendants' failure and refusal to perform its obligations under the
18  contract has directly damaged plaintiff through the loss of his employment with
19  FRESENIUS. In addition, plaintiff has been damaged in an amount according to proof
20  for the months of lost wages and possible promotions.

21  84.    On or about August 20, 2012, FRESENIUS breached the contract by:

22  a.    Terminating Plaintiff's employment without cause;

23  b.    Upon termination, failing to pay Plaintiff a payment equal to 24
24  months of base salary.

25  c.    Failing to reimburse Plaintiff for job related expenses incurred.

26  85.    As a result of Defendant breach of the contract, Plaintiffs have been
27  damaged in a sum not yet ascertained. When such damages are ascertained, Plaintiffs

28

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1  shall seek leave of Court to amend this Complaint to reflect said sum when it has been
2  ascertained.

3      86.    Defendants, and each of them, committed the acts alleged herein
4  maliciously, fraudulently, and oppressively, with the conscious disregard of Plaintiff's
5  rights. Plaintiff is thus entitled to recover punitive damages from Defendants, and
6  each of them, in an amount according to proof.

7      87.    Plaintiff has incurred and continues to incur legal expenses and attorney
8  fees. Plaintiff is presently unaware of the precise amount of said expenses and fees,
9  and prays leave of Court to amend this complaint when said amounts are more fully
10  known.

11                **SEVENTH CAUSE OF ACTION**

12    **FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

13                     (AGAINST FRESENIUS)

14      88.    Plaintiff incorporates and realleges by reference all previous paragraphs
15  of this Complaint as if fully set forth herein.

16      89.    Plaintiff employment agreement with FRESENIUS contained an implied
17  covenant of good faith and fair dealing by which FRESENIUS promised to give
18  Plaintiff full cooperation in his employment performance, and to refrain from doing
19  any act that would prevent or impede Plaintiff from performing all conditions of his
20  employment, or any act that would prevent or impede Plaintiff's enjoyment of the fruits
21  of his employment. Specifically, the covenant of good faith and fair dealing required
22  FRESENIUS to perform the terms and conditions of the employment agreement
23  fairly, honestly, and reasonably. California law implies a covenant of good faith and
24  fair dealing in all contracts between parties entered into in the State of California.

25      90.    FRESENIUS' termination of Plaintiff's employment was wrongful, in bad
26  faith, arbitrary, and unfair, and was done to frustrate his enjoyment of the contract's
27  actual benefits, in breach of said covenant. Plaintiff was terminated on the pretext
28  that just cause existed to discharge him when FRESENIUS knew there was no just

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

                              - 20 -

1  cause. Plaintiff was discharged for reasons extraneous to the employment agreement,
2  without good or sufficient cause.

3      91.   As a result of the actions of the Defendants set forth hereinabove, said
4  Defendants, and each of them, have violated the implied covenant of good faith and fair
5  dealing contained in Defendants policy to deal consistently and fairly with its
6  employees, and for the purpose of frustrating Plaintiff's enjoyment of the benefits of
7  his employment with Defendants. Further, Defendants breached the covenant by:

8          a.   Subjecting Plaintiff to different standards from those expected of
9  other employees;

10          b.   Treating Plaintiff differently because of his race and/or national
11  origin;

12          c.   Terminating Plaintiff's employment without cause, and for
13  reasons that have nothing to do with legitimate business justification, despite
14  excellent job performance; and

15          d.   Failing to follow their written personnel policies, or to apply the
16  same personnel policies to Plaintiff that apply to other employees

17      92.   As a direct, foreseeable, and proximate result of defendants' wrongful
18  termination of Plaintiff has suffered and continues to suffer injury to his professional
19  reputation. Plaintiff has lost and will continue to lose past and future income and
20  benefits, promotions, stock options, and other benefits of employment, and has
21  suffered and continues to suffer humiliation, embarrassment, mental and emotional
22  distress, and discomfort all to Plaintiff's damage in an amount in excess of the
23  jurisdictional limit, the precise amount of which will be proven at trial. In addition,
24  Plaintiff's efforts to mitigate his damages have been hindered due to the monopoly
25  held by FRESNIUS in the renal dialysis market.

26      93.   Plaintiff has incurred and continues to incur legal expenses and attorney
27  fees. Plaintiff is presently unaware of the precise amount of said expenses and fees,
28

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

- 21 -
FIRST AMENDED COMPLAINT

1 | and prays leave of Court to amend this complaint when said amounts are more fully
2 | known.

### EIGHTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (AGAINST ALL DEFENDANTS)

94.   Plaintiff incorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

95.   Defendants and each of them knew or should have known that failure to exercise due care in the performance of Defendants' acts as to Plaintiff's rights would cause Plaintiff severe emotional distress.

96.   As a direct, foreseeable, and proximate result of defendants' wrongful termination of Plaintiff has suffered and continues to suffer injury to his professional reputation. Plaintiff has lost and will continue to lose past and future income and benefits, promotions, stock options, and other benefits of employment, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort all to Plaintiff's damage in an amount in excess of the jurisdictional limit, the precise amount of which will be proven at trial. In addition, Plaintiff's efforts to mitigate his damages have been hindered due to the monopoly held by FRESNIUS in the renal dialysis market.

97.   Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of said expenses and fees, and prays leave of Court to amend this complaint when said amounts are more fully known.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff MOHSEN REIHANIFAM prays judgment to be entered against Defendants, and each of them, and in her favor, as follows:

1.   For compensatory damages including lost wages, lost employee benefits, bonuses, vacation benefits, sick pay, unreimbursed work related expenses, mental and

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

1  emotional distress, and other special and general damages on all causes of action;

2      2.      For an award of interest, including prejudgment interest, at the legal

3  rate;

4      3.      For an award of punitive and exemplary damages in an amount

5  appropriate to punish Defendants and to make an example of them to the community;

6      5.      For cost of suit, including reasonable attorneys' fees; and

7      6.      For such other and further relief as the Court may deem just and proper.

8  Dated: February 7, 2013                    LAW OFFICE OF H. LARRY ELAM III

9

10

11                                              H. Larry Elam III

12

13                                              Attorneys for Plaintiff MOHSEN
                                                REIHANIFAM
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff hereby demands a jury trial in this action.

Dated:  February 7, 2013                    LAW OFFICE OF H. LARRY ELAM III

H. Larry Elam III

Attorneys for Plaintiff MOHSEN REIHANIFAM

- 24 -

**FIRST AMENDED COMPLAINT**

# EXHIBIT A



STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                    EDMUND G. BROWN, JR., Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                        Phyllis W. Cheng, Director
1055 WEST 7TH STREET, SUITE 1400, LOS ANGELES, CA 90017
(213) 439-6770
www.dfeh.ca.gov

August 16, 2011

REIHANIFAM, MOHSEN
P.O. BOX 7183
RANCHO SANTA FE, CA 92067

RE:  E201112R5594-00
     REIHANIFAM/FRESENIUS MEDICAL CARE NORTH AMERICA

Dear REIHANIFAM, MOHSEN:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department
of Fair Employment and Housing (DFEH) has been closed effective August 16, 2011
because an immediate right-to-sue notice was requested. DFEH will take no further action
on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965,
subdivision (b), a civil action may be brought under the provisions of the Fair Employment
and Housing Act against the person, employer, labor organization or employment agency
named in the above-referenced complaint. The civil action must be filed within one year
from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity
Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this
DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act,
whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Tina Walker*

Tina Walker
District Administrator

cc:   Case File

BRIAN O'CONNELL
VP OF HUMAN RESOURCES
FRESENIUS MEDICAL CARE NA
920 WINTER STREET
WALTHAM, MA 02451

DFEH-200-43 (06/06)



STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

EDMUND G. BROWN, JR., Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

Phyllis W. Cheng, Director

1055 WEST 7TH STREET, SUITE 1400, LOS ANGELES, CA 90017
(213) 439-6770
www.dfeh.ca.gov

August 16, 2011

REIHANIFAM, MOHSEN
P.O. BOX 7183
RANCHO SANTA FE,CA,92067

RE: E201112R5594-01
REIHANIFAM/LIPPS, BEN. AS AN INDIVIDUAL

Dear REIHANIFAM, MOHSEN:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department
of Fair Employment and Housing (DFEH) has been closed effective August 16, 2011
because an immediate right-to-sue notice was requested. DFEH will take no further action
on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965,
subdivision (b), a civil action may be brought under the provisions of the Fair Employment
and Housing Act against the person, employer, labor organization or employment agency
named in the above-referenced complaint. The civil action must be filed within one year
from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity
Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this
DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act,
whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Tina Walker

Tina Walker
District Administrator

cc: Case File

BRIAN O'CONNELL
VP OF HUMAN RESOURCES
FRESENIUS MEDICAL CARE NA
920 WINTER STREET
WALTHAM, MA 02451

DFEH-200-43 (08/08)



STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                    EDMUND G. BROWN, JR., Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                               Phyllis W. Cheng, Director
1055 WEST 7TH STREET, SUITE 1400, LOS ANGELES, CA 90017
(213) 439-6770
www.dfeh.ca.gov

August 16, 2011

REIHANIFAM, MOHSEN
P.O. BOX 7183
RANCHO SANTA FE,CA,92067

RE:   E201112R5594-02
      REIHANIFAM/POWELL, MAURICE, AS AN INDIVIDUAL

Dear REIHANIFAM, MOHSEN:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department
of Fair Employment and Housing (DFEH) has been closed effective August 16, 2011
because an immediate right-to-sue notice was requested. DFEH will take no further action
on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965,
subdivision (b), a civil action may be brought under the provisions of the Fair Employment
and Housing Act against the person, employer, labor organization or employment agency
named in the above-referenced complaint. The civil action must be filed within one year
from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity
Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this
DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act,
whichever is earlier.

Notice of Case Closure
Page Two


DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Tina Walker

**Tina Walker**
**District Administrator**

cc:   Case File


BRIAN O'CONNELL
VP HUMAN RESOURCES
FRESENIUS MEDICAL CARE NA
920 WINTER STREET
WALTHAM, MA 02451

DFEH-200-43 (08/08)

# EXHIBIT B

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # **E201112R5594-00**

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.) | | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|---|
| **REIHANIFAM, MOHSEN** | | **(858)756-7174** |

| ADDRESS | | |
|---|---|---|
| **P.O. BOX 7183** | | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **RANCHO SANTA FE, CA 92067** | **SAN DIEGO** | **073** |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| **FRESENIUS MEDICAL CARE NORTH AMERICA** | | **(781)699-9000** |

| ADDRESS | | DFEH USE ONLY |
|---|---|---|
| **P.O. BOX 7183** | | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **RANCHO SANTA FE, CA 92067** | **SAN DIEGO** | **073** |

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|
| **500+** | **08/21/2010** | **00** |

THE PARTICULARS ARE:

I allege that on about or before **08/21/2010**, the following conduct occurred:

- X termination
- ___ laid off
- X demotion
- ___ harassment
- ___ genetic characteristics testing
- ___ constructive discharge (forced to quit)
- ___ impermissible non-job-related inquiry

- ___ denial of employment
- ___ denial of promotion
- ___ denial of transfer
- ___ denial of accommodation
- X failure to prevent discrimination or retaliation
- X retaliation
- X other (specify) Harassment

- ___ denial of family or medical leave
- ___ denial of pregnancy leave
- ___ denied of equal pay
- ___ denial of right to wear pants
- ___ denial of pregnancy accommodation

by **FRESENIUS MEDICAL CARE NORTH AMERICA**

Name of Person ___ Job Title (supervisor/manager/personnel director/etc.) ___

because of:

- ___ sex
- ___ age
- X religion
- X race/color

- X national origin/ancestry
- ___ marital status
- ___ sexual orientation
- ___ association

- ___ disability (physical or mental)
- ___ medical condition (cancer or genetic characteristic)
- ___ other (specify) ___

- X retaliation for engaging in protected activity or requesting a protected leave or accommodation

**State of what you believe to be the reason(s) for discrimination**

I WAS TERMINATED FROM MY POSITION AT FRESENIUS (THE "COMPANY") IN RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES, SPEAKING OUT AGAINST FINANCIAL IRREGULARITIES, STANDING UP FOR SAFETY AND QUALITY IN THE PRODUCTS AND OPPOSING UNLAWFUL, DISCRIMINATORY PRACTICES, INCLUDING, BUT NOT LIMITED TO SEXUAL HARASSMENT TOWARDS MYSELF AND OTHER MINORITIES, INCLUDING WOMEN. PRIOR TO THE RETALIATION, I WAS THE SUBJECT OF HARASSMENT AND DISCRIMINATION BASED ON MY RACE, NATIONAL ORIGIN, RELIGION AND/OR COLOR BEGINNING IN 1999 AND CONTINUING UP UNTIL I WAS TERMINATED IN AUGUST 2010.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated 08/16/2011

At **Walnut Creek**

DATE FILED: 08/16/2011

DFEH-300-03o (02/08)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

I WAS TERMINATED FROM MY POSITION AT FRESENIUS (THE "COMPANY") IN RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES, SPEAKING OUT AGAINST FINANCIAL IRREGULARITIES, STANDING UP FOR SAFETY AND QUALITY IN THE PRODUCTS AND OPPOSING UNLAWFUL, DISCRIMINATORY PRACTICES, INCLUDING, BUT NOT LIMITED TO SEXUAL HARASSMENT TOWARDS MYSELF AND OTHER MINORITIES, INCLUDING WOMEN. PRIOR TO THE RETALIATION, I WAS THE SUBJECT OF HARASSMENT AND DISCRIMINATION BASED ON MY RACE, NATIONAL ORIGIN, RELIGION AND/OR COLOR BEGINNING IN 1999 AND CONTINUING UP UNTIL I WAS TERMINATED IN AUGUST 2010.

AFTER I BECAME PRESIDENT OF THE DIALYSIS WEST BUSINESS UNIT I SAW A DISTINCT RELAXATION OF MORAL STANDARDS. CORNERS BEGAN TO BE CUT, QUALITY OF PRODUCT WAS SACRIFICED, FINANCIAL IRREGULARITIES BEGAN TO SURFACE AND ABUSIVE BEHAVIOR TOWARDS MINORITIES WAS TOLERATED. WHEN I REFUSED TO LOOK THE OTHER WAY AND REPORTED THESE THINGS TO BOTH HUMAN RESOURCES (BRIAN O'CONNELL) AND THE CHIEF EXECUTIVE OFFICER OF THE COMPANY (BEN LIPPS), I BEGAN TO BE SUBJECTED TO UNFAIR SCRUTINY, DEMOTIONS, RETALIATION, HARASSMENT AND DISCRIMINATION. WHEN DISCUSSING ISSUES OF EMPLOYEE MORALE, MR. LIPPS COMMENTED THAT I HAD BEEN "IN THE SUN TOO LONG" REFERRING TO MY DARK SKIN COLOR AND THAT I WAS "AN ARGUING MIDDLE EASTERN NEGOTIATOR." WHEN I RAISED CONCERNS ABOUT IMPROPER BUSINESS, ETHICAL, FINANCIAL PRACTICES AND UNFAIR TREATMENT OF MINORITY EMPLOYEES, I WAS TRANSFERRED TO A MUCH SMALLER, NEWLY CREATED, POSITION (PRESIDENT OF DIALYSIS PRODUCTS RESEARCH AND DEVELOPMENT AND NEW BUSINESS DEVELOPMENT IN THE DIALYSIS PRODUCTS DIVISION) DESPITE THE FACT THAT THE DEPARTMENT I WAS IN CHARGE OF WAS CONSIDERED THE BEST WITHIN THE COMPANY AND HAD THE HIGHEST GROWTH RATE IN THE U.S., THE BEST CASH COLLECTION, THE BEST QUALITY AND THE LARGEST NUMBER OF CENTERS OF EXCELLENT WITHIN THE COMPANY.

DESPITE SUFFERING WHAT I INTERPRETED AS A DEMOTION, I CONTINUED TO PERFORM AT A SUPERIOR LEVEL. DESPITE MY CHANGE IN POSITION I CONTINUED TO SEE THE SAME PROBLEMS AND I CONTINUED TO RAISE THE SAME CONCERNS TO COMPANY MANAGEMENT. WHEN I COMPLAINED TO MY DIRECT REPORT (MAURICE POWELL), THE RESULTS OF MY CONTINUED COMPLAINTS WAS THAT MESSRS. POWELL AND LIPPS BEGAN TO ISOLATE ME AND KEEP ME OUT OF THE LOOP BY EXCLUDING ME FROM MEETINGS AND OTHER KEY ACTIVITIES THAT I HAD PREVIOUSLY BEEN A ROUTINE PARTICIPANT AND DROPPING ME ALTOGETHER FROM RELEVANT DISTRIBUTION LISTS. I CONTINUED TO COMPLAINT TO MR. POWELL BOTH IN WRITING AND ORALLY ABOUT THE HARASSMENT, RETALIATION AND DISCRIMINATION I CONTINUED TO EXPERIENCE.

I REALIZED THAT THE COMPANY WAS NO LONGER A MINORITY FRIENDLY COMPANY AND WOULD NOT TREAT MINORITIES CORRECTLY, INCLUDING, BUT NOT LIMITED TO MYSELF. IN FACT, I HEARD THE COMPANY'S EMPLOYMENT LAWYER REFER TO THE COMPANY AS NOT BEING "A MINORITY FRIENDLY COMPANY" AND THAT THE COMPANY "DOES NOT TREAT MINORITIES CORRECTLY." PERSONALLY OFFENSIVE CONDUCT CONTINUED. ON ONE OCCASION DURING A CORPORATE EVENT WHERE DANCING WAS TAKING PLACE, BEING OF IRANIAN DESCENT, I FOUND IT OFFENSIVE FOR MR. POWELL TO COMMENT THAT HE DID NOT KNOW THAT "IRANIANS COULD EVEN DANCE" WHILE AT THE SAME TIME HE CONTINUED TO PINCH MY BACKSIDE DESPITE MY PROTESTATIONS. I ALSO HEARD A SR. HUMAN RESOURCES EMPLOYEE REFER TO THE COMPANY AS A "WHITE MALE CLUB," IN ADDITION TO A NUMBER OF OTHER RUDE AND INSENSITIVE COMMENTS THAT INFERRED BIAS BECAUSE OF MY RACE, NATIONAL ORIGIN, RELIGION AND/OR COLOR. MR. POWELL NEVER ADDRESSED THESE ISSUES IN THE PROPER WAY, BUT INSTEAD BEGAN TO PARTICIPATE IN THE HARASSMENT, DISCRIMINATION AND RETALIATION BY CONTINUING TO ISOLATE AND EXCLUDE ME.

THE HARASSMENT, RETALIATION AND DISPARATE TREATMENT CONTINUED IN SEPTEMBER 2007, WHEN AN INDIVIDUAL WHO HAD BEEN REPORTING TO ME WAS TAKEN FROM ME AND TOLD TO REPORT TO ANOTHER PERSON. THIS OCCURRED WITHOUT ANY PRIOR DISCUSSION WITH ME OR NOTICE TO ME.

IN 2008, I CONTINUED TO HEAR COMMENTS MADE BY MR. POWELL THAT WAS DISPARAGING OF RACIAL MINORITIES AND WOMEN. I INFORMED THE COMPANY ABOUT HIS CONDUCT. IN ADDITION, I BECAME AWARE OF INFORMATION THAT WOULD SUGGEST THAT IMPROPER ACCOUNTING PRACTICES WERE OCCURRING WITHIN THE COMPANY. AGAIN, I NOTIFIED THE COMPANY ABOUT THESE CONCERNING DEVELOPMENTS. DESPITE MY MANY COMPLAINTS, THE COMPANY CONTINUED TO IGNORE MY COMPLAINTS.

IN FEBRUARY 2009, IN RESPONSE TO MY CONTINUED COMPLAINTS, MESSRS. LIPPS AND POWELL REMOVED ME FROM MY POSITION OF HEAD OF RESEARCH AND DEVELOPMENT AND DEMOTED ME AGAIN TO THE POSITION OF A "SENIOR ADVISOR." I CONTACTED MR. O'CONNELL IN HUMAN RESOURCES AND INFORMED HIM THAT I HAD BEEN PUSHED OUT OF MY POSITION IN RETALIATION FOR CONTINUING TO COMPLAIN ABOUT THE ISOLATION, HUMILIATION, HARASSMENT, DISCRIMINATION AND COMPANY IRREGULARITIES. DESPITE MY COMPLAINTS, I CONTINUED TO BE ISOLATED, EXCLUDED AND TREATED DIFFERENTLY BECAUSE OF MY COMPLAINTS. THIS UNFAIR TREATMENT CONTINUED UNTIL 2010 WHEN I WAS ULTIMATELY TERMINATED DESPITE SUPERIOR PERFORMANCE AND PRAISE FROM MANY WITHIN THE COMPANY.

# *** EMPLOYMENT ***

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # | E201112R5594-01 |
|---|---|---|
| | | DFEH USE ONLY |

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (Indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| **REIHANIFAM, MOHSEN** | **(858)756-7174** |

**ADDRESS**

**P.O. BOX 7183**

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **RANCHO SANTA FE,CA,92067** | **SAN DIEGO** | **073** |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| **LIPPS, BEN** | **(781)699-9000** |

| ADDRESS | DFEH USE ONLY |
|---|---|
| **920 WINTER STREET** | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **WALTHAM, MA 02451** | | |

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month,day, and year) | RESPONDENT CODE | |
|---|---|---|---|
| **500+** | **08/21/2010** | **01** | |

THE PARTICULARS ARE:

I allege that on about or before **08/21/2010**, the following conduct occurred:

- X termination
- ___ laid off
- X demotion
- ___ harassment
- ___ genetic characteristics testing
- ___ constructive discharge (forced to quit)
- ___ impermissible non-job-related inquiry

- ___ denial of employment
- ___ denial of promotion
- ___ denial of transfer
- ___ denial of accommodation
- X failure to prevent discrimination or retaliation
- X retaliation
- X other (specify) Harassment

- ___ denial of family or medical leave
- ___ denial of pregnancy leave
- ___ denial of equal pay
- ___ denial of right to wear pants
- ___ denial of pregnancy accommodation

by **LIPPS, BEN**     **CEO**

Name of Person     Job Title (supervisor/manager/personnel director/etc.)

because of :

- ___ sex
- ___ age
- X religion
- X race/color

- X national origin/ancestry
- ___ marital status
- ___ sexual orientation
- ___ association

- ___ disability (physical or mental)
- ___ medical condition (cancer or generic characteristic
- ___ other (specify) ___

- X retaliation for engaging in protected activity or requesting a protected leave or accommodation

**State of what you believe to be the reason(s) for discrimination**

I WAS TERMINATED FROM MY POSITION AT FRESENIUS (THE "COMPANY") IN RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES, SPEAKING OUT AGAINST FINANCIAL IRREGULARITIES, STANDING UP FOR SAFETY AND QUALITY IN THE PRODUCTS AND OPPOSING UNLAWFUL, DISCRIMINATORY PRACTICES, INCLUDING, BUT NOT LIMITED TO SEXUAL HARASSMENT TOWARDS MYSELF AND OTHER MINORITIES, INCLUDING WOMEN. PRIOR TO THE RETALIATION, I WAS THE SUBJECT OF HARASSMENT AND DISCRIMINATION BASED ON MY RACE, NATIONAL ORIGIN, RELIGION AND/OR COLOR BEGINNING IN 1999 AND CONTINUING UP UNTIL I WAS TERMINATED IN AUGUST 2010.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated 08/16/2011

At Walnut Creek

DATE FILED: 08/16/2011

DFEH-300-03o (02/08)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

I WAS TERMINATED FROM MY POSITION AT FRESENIUS (THE "COMPANY") IN RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES, SPEAKING OUT AGAINST FINANCIAL IRREGULARITIES, STANDING UP FOR SAFETY AND QUALITY IN THE PRODUCTS AND OPPOSING UNLAWFUL, DISCRIMINATORY PRACTICES, INCLUDING, BUT NOT LIMITED TO SEXUAL HARASSMENT TOWARDS MYSELF AND OTHER MINORITIES, INCLUDING WOMEN. PRIOR TO THE RETALIATION, I WAS THE SUBJECT OF HARASSMENT AND DISCRIMINATION BASED ON MY RACE, NATIONAL ORIGIN, RELIGION AND/OR COLOR BEGINNING IN 1999 AND CONTINUING UP UNTIL I WAS TERMINATED IN AUGUST 2010.

AFTER I BECAME PRESIDENT OF THE DIALYSIS WEST BUSINESS UNIT I SAW A DISTINCT RELAXATION OF MORAL STANDARDS. CORNERS BEGAN TO BE CUT, QUALITY OF PRODUCT WAS SACRIFICED, FINANCIAL IRREGULARITIES BEGAN TO SURFACE AND ABUSIVE BEHAVIOR TOWARDS MINORITIES WAS TOLERATED. WHEN I REFUSED TO LOOK THE OTHER WAY AND REPORTED THESE THINGS TO BOTH HUMAN RESOURCES (BRIAN O'CONNELL) AND THE CHIEF EXECUTIVE OFFICER OF THE COMPANY (BEN LIPPS), I BEGAN TO BE SUBJECTED TO UNFAIR SCRUTINY, DEMOTIONS, RETALIATION, HARASSMENT AND DISCRIMINATION. WHEN DISCUSSING ISSUES OF EMPLOYEE MORALE, MR. LIPPS COMMENTED THAT I HAD BEEN "IN THE SUN TOO LONG" REFERRING TO MY DARK SKIN COLOR AND THAT I WAS "AN ARGUING MIDDLE EASTERN NEGOTIATOR." WHEN I RAISED CONCERNS ABOUT IMPROPER BUSINESS, ETHICAL, FINANCIAL PRACTICES AND UNFAIR TREATMENT OF MINORITY EMPLOYEES, I WAS TRANSFERRED TO A MUCH SMALLER, NEWLY CREATED, POSITION (PRESIDENT OF DIALYSIS PRODUCTS RESEARCH AND DEVELOPMENT AND NEW BUSINESS DEVELOPMENT IN THE DIALYSIS PRODUCTS DIVISION) DESPITE THE FACT THAT THE DEPARTMENT I WAS IN CHARGE OF WAS CONSIDERED THE BEST WITHIN THE COMPANY AND HAD THE HIGHEST GROWTH RATE IN THE U.S., THE BEST CASH COLLECTION, THE BEST QUALITY AND THE LARGEST NUMBER OF CENTERS OF EXCELLENT WITHIN THE COMPANY.

DESPITE SUFFERING WHAT I INTERPRETED AS A DEMOTION, I CONTINUED TO PERFORM AT A SUPERIOR LEVEL. DESPITE MY CHANGE IN POSITION I CONTINUED TO SEE THE SAME PROBLEMS AND I CONTINUED TO RAISE THE SAME CONCERNS TO COMPANY MANAGEMENT. WHEN I COMPLAINED TO MY DIRECT REPORT (MAURICE POWELL), THE RESULTS OF MY CONTINUED COMPLAINTS WAS THAT MESSRS. POWELL AND LIPPS BEGAN TO ISOLATE ME AND KEEP ME OUT OF THE LOOP BY EXCLUDING ME FROM MEETINGS AND OTHER KEY ACTIVITIES THAT I HAD PREVIOUSLY BEEN A ROUTINE PARTICIPANT AND DROPPING ME ALTOGETHER FROM RELEVANT DISTRIBUTION LISTS. I CONTINUED TO COMPLAINT TO MR. POWELL BOTH IN WRITING AND ORALLY ABOUT THE HARASSMENT, RETALIATION AND DISCRIMINATION I CONTINUED TO EXPERIENCE.

I REALIZED THAT THE COMPANY WAS NO LONGER A MINORITY FRIENDLY COMPANY AND WOULD NOT TREAT MINORITIES CORRECTLY, INCLUDING, BUT NOT LIMITED TO MYSELF. IN FACT, I HEARD THE COMPANY'S EMPLOYMENT LAWYER REFER TO THE COMPANY AS NOT BEING "A MINORITY FRIENDLY COMPANY" AND THAT THE COMPANY "DOES NOT TREAT MINORITIES CORRECTLY." PERSONALLY OFFENSIVE CONDUCT CONTINUED. ON ONE OCCASION DURING A CORPORATE EVENT WHERE DANCING WAS TAKING PLACE, BEING OF IRANIAN DESCENT, I FOUND IT OFFENSIVE FOR MR. POWELL TO COMMENT THAT HE DID NOT KNOW THAT "IRANIANS COULD EVEN DANCE" WHILE AT THE SAME TIME HE CONTINUED TO PINCH MY BACKSIDE DESPITE MY PROTESTATIONS. I ALSO HEARD A SR. HUMAN RESOURCES EMPLOYEE REFER TO THE COMPANY AS A "WHITE MALE CLUB," IN ADDITION TO A NUMBER OF OTHER RUDE AND INSENSITIVE COMMENTS THAT INFERRED BIAS BECAUSE OF MY RACE, NATIONAL ORIGIN, RELIGION AND/OR COLOR. MR. POWELL NEVER ADDRESSED THESE ISSUES IN THE PROPER WAY, BUT INSTEAD BEGAN TO PARTICIPATE IN THE HARASSMENT, DISCRIMINATION AND RETALIATION BY CONTINUING TO ISOLATE AND EXCLUDE ME.

THE HARASSMENT, RETALIATION AND DISPARATE TREATMENT CONTINUED IN SEPTEMBER 2007, WHEN AN INDIVIDUAL WHO HAD BEEN REPORTING TO ME WAS TAKEN FROM ME AND TOLD TO REPORT TO ANOTHER PERSON. THIS OCCURRED WITHOUT ANY PRIOR DISCUSSION WITH ME OR NOTICE TO ME.

IN 2008, I CONTINUED TO HEAR COMMENTS MADE BY MR. POWELL THAT WAS DISPARAGING OF RACIAL MINORITIES AND WOMEN. I INFORMED THE COMPANY ABOUT HIS CONDUCT. IN ADDITION, I BECAME AWARE OF INFORMATION THAT WOULD SUGGEST THAT IMPROPER ACCOUNTING PRACTICES WERE OCCURRING WITHIN THE COMPANY. AGAIN, I NOTIFIED THE COMPANY ABOUT THESE CONCERNING DEVELOPMENTS. DESPITE MY MANY COMPLAINTS, THE COMPANY CONTINUED TO IGNORE MY COMPLAINTS.

IN FEBRUARY 2009, IN RESPONSE TO MY CONTINUED COMPLAINTS, MESSRS. LIPPS AND POWELL REMOVED ME FROM MY POSITION OF HEAD OF RESEARCH AND DEVELOPMENT AND DEMOTED ME AGAIN TO THE POSITION OF A "SENIOR ADVISOR." I CONTACTED MR. O'CONNELL IN HUMAN RESOURCES AND INFORMED HIM THAT I HAD BEEN PUSHED OUT OF MY POSITION IN RETALIATION FOR CONTINUING TO COMPLAIN ABOUT THE ISOLATION, HUMILIATION, HARASSMENT, DISCRIMINATION AND COMPANY IRREGULARITIES. DESPITE MY COMPLAINTS, I CONTINUED TO BE ISOLATED, EXCLUDED AND TREATED DIFFERENTLY BECAUSE OF MY COMPLAINTS. THIS UNFAIR TREATMENT CONTINUED UNTIL 2010 WHEN I WAS ULTIMATELY TERMINATED DESPITE SUPERIOR PERFORMANCE AND PRAISE FROM MANY WITHIN THE COMPANY.

# \* \* \* EMPLOYMENT \* \* \*

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH #   **E201112R5594-02**

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (Indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| REIHANIFAM, MOHSEN | (858)756-7174 |

ADDRESS
P.O. BOX 7183

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| RANCHO SANTA FE,CA,92067 | SAN DIEGO | 073 |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| POWELL, MAURICE | (781)699-9000 |

ADDRESS
920 WINTER STREET

DFEH USE ONLY

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| WALTHAM, MA 02451 | | |

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month,day, and year) | RESPONDENT CODE |
|---|---|---|
| 500+ | 08/21/2010 | 02 |

**THE PARTICULARS ARE:**

I allege that on about or before 08/21/2010 , the following conduct occurred:

- X termination
- ___ laid off
- X demotion
- ___ harassment
- ___ genetic characteristics testing
- ___ constructive discharge (forced to quit)
- ___ impermissible non-job-related inquiry

- ___ denial of employment
- ___ denial of promotion
- ___ denial of transfer
- ___ denial of accommodation
- X failure to prevent discrimination or retaliation
- X retaliation
- X other (specify) Harassment

- ___ denial of family or medical leave
- ___ denial of pregnancy leave
- ___ denial of equal pay
- ___ denial of right to wear pants
- ___ denial of pregnancy accommodation

by **POWELL, MAURICE**
Name of Person

**CEO**
Job Title (supervisor/manager/personnel director/etc.)

because of :
- ___ sex
- ___ age
- X religion
- X race/color

- X national origin/ancestry
- ___ marital status
- ___ sexual orientation
- ___ association

- ___ disability (physical or mental)
- ___ medical condition (cancer or genetic characteristic
- ___ other (specify) ___

- X retaliation for engaging in protected activity or requesting a protected leave or accommodation

State of what you believe to be the reason(s) for discrimination

I WAS TERMINATED FROM MY POSITION AT FRESENIUS (THE "COMPANY") IN RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES, SPEAKING OUT AGAINST FINANCIAL IRREGULARITIES, STANDING UP FOR SAFETY AND QUALITY IN THE PRODUCTS AND OPPOSING UNLAWFUL, DISCRIMINATORY PRACTICES, INCLUDING, BUT NOT LIMITED TO SEXUAL HARASSMENT TOWARDS MYSELF AND OTHER MINORITIES, INCLUDING WOMEN. PRIOR TO THE RETALIATION, I WAS THE SUBJECT OF HARASSMENT AND DISCRIMINATION BASED ON MY RACE, NATIONAL ORIGIN, RELIGION AND/OR COLOR BEGINNING IN 1999 AND CONTINUING UP UNTIL I WAS TERMINATED IN AUGUST 2010.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated 08/16/2011

At Walnut Creek

DATE FILED: 08/16/2011

DFEH-300-03o (02/08)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

I WAS TERMINATED FROM MY POSITION AT FRESENIUS (THE "COMPANY") IN RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES, SPEAKING OUT AGAINST FINANCIAL IRREGULARITIES, STANDING UP FOR SAFETY AND QUALITY IN THE PRODUCTS AND OPPOSING UNLAWFUL, DISCRIMINATORY PRACTICES, INCLUDING, BUT NOT LIMITED TO SEXUAL HARASSMENT TOWARDS MYSELF AND OTHER MINORITIES, INCLUDING WOMEN. PRIOR TO THE RETALIATION, I WAS THE SUBJECT OF HARASSMENT AND DISCRIMINATION BASED ON MY RACE, NATIONAL ORIGIN, RELIGION AND/OR COLOR BEGINNING IN 1999 AND CONTINUING UP UNTIL I WAS TERMINATED IN AUGUST 2010.

AFTER I BECAME PRESIDENT OF THE DIALYSIS WEST BUSINESS UNIT I SAW A DISTINCT RELAXATION OF MORAL STANDARDS. CORNERS BEGAN TO BE CUT, QUALITY OF PRODUCT WAS SACRIFICED, FINANCIAL IRREGULARITIES BEGAN TO SURFACE AND ABUSIVE BEHAVIOR TOWARDS MINORITIES WAS TOLERATED. WHEN I REFUSED TO LOOK THE OTHER WAY AND REPORTED THESE THINGS TO BOTH HUMAN RESOURCES (BRIAN O'CONNELL) AND THE CHIEF EXECUTIVE OFFICER OF THE COMPANY (BEN LIPPS), I BEGAN TO BE SUBJECTED TO UNFAIR SCRUTINY, DEMOTIONS, RETALIATION, HARASSMENT AND DISCRIMINATION. WHEN DISCUSSING ISSUES OF EMPLOYEE MORALE, MR. LIPPS COMMENTED THAT I HAD BEEN "IN THE SUN TOO LONG" REFERRING TO MY DARK SKIN COLOR AND THAT I WAS "AN ARGUING MIDDLE EASTERN NEGOTIATOR." WHEN I RAISED CONCERNS ABOUT IMPROPER BUSINESS, ETHICAL, FINANCIAL PRACTICES AND UNFAIR TREATMENT OF MINORITY EMPLOYEES, I WAS TRANSFERRED TO A MUCH SMALLER, NEWLY CREATED, POSITION (PRESIDENT OF DIALYSIS PRODUCTS RESEARCH AND DEVELOPMENT AND NEW BUSINESS DEVELOPMENT IN THE DIALYSIS PRODUCTS DIVISION) DESPITE THE FACT THAT THE DEPARTMENT I WAS IN CHARGE OF WAS CONSIDERED THE BEST WITHIN THE COMPANY AND HAD THE HIGHEST GROWTH RATE IN THE U.S., THE BEST CASH COLLECTION, THE BEST QUALITY AND THE LARGEST NUMBER OF CENTERS OF EXCELLENT WITHIN THE COMPANY.

DESPITE SUFFERING WHAT I INTERPRETED AS A DEMOTION, I CONTINUED TO PERFORM AT A SUPERIOR LEVEL. DESPITE MY CHANGE IN POSITION I CONTINUED TO SEE THE SAME PROBLEMS AND I CONTINUED TO RAISE THE SAME CONCERNS TO COMPANY MANAGEMENT. WHEN I COMPLAINED TO MY DIRECT REPORT (MAURICE POWELL), THE RESULTS OF MY CONTINUED COMPLAINTS WAS THAT MESSRS. POWELL AND LIPPS BEGAN TO ISOLATE ME AND KEEP ME OUT OF THE LOOP BY EXCLUDING ME FROM MEETINGS AND OTHER KEY ACTIVITIES THAT I HAD PREVIOUSLY BEEN A ROUTINE PARTICIPANT AND DROPPING ME ALTOGETHER FROM RELEVANT DISTRIBUTION LISTS. I CONTINUED TO COMPLAINT TO MR. POWELL BOTH IN WRITING AND ORALLY ABOUT THE HARASSMENT, RETALIATION AND DISCRIMINATION I CONTINUED TO EXPERIENCE.

I REALIZED THAT THE COMPANY WAS NO LONGER A MINORITY FRIENDLY COMPANY AND WOULD NOT TREAT MINORITIES CORRECTLY, INCLUDING, BUT NOT LIMITED TO MYSELF. IN FACT, I HEARD THE COMPANY'S EMPLOYMENT LAWYER REFER TO THE COMPANY AS NOT BEING "A MINORITY FRIENDLY COMPANY" AND THAT THE COMPANY "DOES NOT TREAT MINORITIES CORRECTLY." PERSONALLY OFFENSIVE CONDUCT CONTINUED. ON ONE OCCASION DURING A CORPORATE EVENT WHERE DANCING WAS TAKING PLACE, BEING OF IRANIAN DESCENT, I FOUND IT OFFENSIVE FOR MR. POWELL TO COMMENT THAT HE DID NOT KNOW THAT "IRANIANS COULD EVEN DANCE" WHILE AT THE SAME TIME HE CONTINUED TO PINCH MY BACKSIDE DESPITE MY PROTESTATIONS. I ALSO HEARD A SR. HUMAN RESOURCES EMPLOYEE REFER TO THE COMPANY AS A "WHITE MALE CLUB." IN ADDITION TO A NUMBER OF OTHER RUDE AND INSENSITIVE COMMENTS THAT INFERRED BIAS BECAUSE OF MY RACE, NATIONAL ORIGIN, RELIGION AND/OR COLOR. MR. POWELL NEVER ADDRESSED THESE ISSUES IN THE PROPER WAY, BUT INSTEAD BEGAN TO PARTICIPATE IN THE HARASSMENT, DISCRIMINATION AND RETALIATION BY CONTINUING TO ISOLATE AND EXCLUDE ME.

THE HARASSMENT, RETALIATION AND DISPARATE TREATMENT CONTINUED IN SEPTEMBER 2007, WHEN AN INDIVIDUAL WHO HAD BEEN REPORTING TO ME WAS TAKEN FROM ME AND TOLD TO REPORT TO ANOTHER PERSON. THIS OCCURRED WITHOUT ANY PRIOR DISCUSSION WITH ME OR NOTICE TO ME.

IN 2008, I CONTINUED TO HEAR COMMENTS MADE BY MR. POWELL THAT WAS DISPARAGING OF RACIAL MINORITIES AND WOMEN. I INFORMED THE COMPANY ABOUT HIS CONDUCT. IN ADDITION, I BECAME AWARE OF INFORMATION THAT WOULD SUGGEST THAT IMPROPER ACCOUNTING PRACTICES WERE OCCURRING WITHIN THE COMPANY. AGAIN, I NOTIFIED THE COMPANY ABOUT THESE CONCERNING DEVELOPMENTS. DESPITE MY MANY COMPLAINTS, THE COMPANY CONTINUED TO IGNORE MY COMPLAINTS.

IN FEBRUARY 2009, IN RESPONSE TO MY CONTINUED COMPLAINTS, MESSRS. LIPPS AND POWELL REMOVED ME FROM MY POSITION OF HEAD OF RESEARCH AND DEVELOPMENT AND DEMOTED ME AGAIN TO THE POSITION OF A "SENIOR ADVISOR." I CONTACTED MR. O'CONNELL IN HUMAN RESOURCES AND INFORMED HIM THAT I HAD BEEN PUSHED OUT OF MY POSITION IN RETALIATION FOR CONTINUING TO COMPLAIN ABOUT THE ISOLATION, HUMILIATION, HARASSMENT, DISCRIMINATION AND COMPANY IRREGULARITIES. DESPITE MY COMPLAINTS, I CONTINUED TO BE ISOLATED, EXCLUDED AND TREATED DIFFERENTLY BECAUSE OF MY COMPLAINTS. THIS UNFAIR TREATMENT CONTINUED UNTIL 2010 WHEN I WAS ULTIMATELY TERMINATED DESPITE SUPERIOR PERFORMANCE AND PRAISE FROM MANY WITHIN THE COMPANY.

# EXHIBIT C



## Fresenius Medical Care

### EMPLOYMENT AGREEMENT

**THIS AGREEMENT** is made, and entered into, as of April, 2003, by and between Fresenius Medical Care North America ("FMCNA" or the "EMPLOYER"), with principal offices located at 95 Hayden Avenue, Lexington, MA 02420 and Mohsen Reihanifam ("EMPLOYEE") currently residing at P.O. Box 605, Solana Beach, CA 92075.

**WITNESSETH:**

**WHEREAS**, FMCNA desires to employ EMPLOYEE as President of Dialysis Products Research and Business Development, Dialysis Products Division, and,

**WHEREAS**, the parties hereto desire to express the terms and conditions of such employment.

**NOW THEREFORE**, it is understood and agreed to between the parties as follows:

1. **Employment.** FMCNA hereby employs EMPLOYEE as President of Dialysis Products Research and Business Development, Dialysis Products Division, and EMPLOYEE hereby accepts the employment upon the terms and conditions of this Agreement.

2. **Term.** The term of this Agreement shall commence as of April, 2003 and continue thereafter, unless terminated in accordance with the provisions hereinafter stated. **The Initial Term shall be renewed by a successive one (1) year period unless either party gives written notice of non-renewal to the other party at least thirty (30) days prior to any termination date. The Initial Term and any subsequent renewal periods shall be called the "Employment Term."**

3. **Duties and Responsibilities.** EMPLOYEE shall serve full time as President of Dialysis Products Research and Business Development, Dialysis Products Division and in this position, EMPLOYEE shall report directly to the President of the Dialysis Products Division. EMPLOYEE shall to the best of his ability and experience competently, loyally, diligently and conscientiously perform all of the duties and obligations expressly or implicitly required under this Agreement. EMPLOYEE further agrees that, in conducting business in the interest of the EMPLOYER, he will not engage in, knowingly permit others under his control to carry on, or induce others to engage in any practice or commit any acts in violation of any federal or state or local law or ordinance.

4. **Compensation and Benefits.**

a) **Base Salary.** EMPLOYER shall pay EMPLOYEE for all services rendered a base salary of Two Hundred Sixty Three Thousand, Fifty-four Dollars and 79 Cents ($263,054.79) per year, (the "Base Salary"), payable in accordance with FMCNA's payroll procedures, subject to customary withholding and employment taxes. At the end of each year of employment hereunder, EMPLOYEE's performance for the prior year shall be reviewed and evaluated. If EMPLOYEE's performance is satisfactory, EMPLOYEE shall receive an increase in his base salary commensurate with level of achievement.

b) Incentive Compensation. During EMPLOYEE's employment with FMCNA, EMPLOYEE shall be entitled to participate in FMCNA's Management Bonus Plan and any other such incentive compensation plans as are now available or may become available to other similarly positioned senior executives of FMCNA. EMPLOYEE will be in the Management Bonus Plan at a target level bonus of forty percent (40%) and the maximum bonus is eighty percent (80%) of base salary. Funding for the plan is based upon attainment of specific individual and company financial objectives. EMPLOYEE's entitlement to a bonus under the Management Bonus Plan will be governed by terms of that Plan.

c) Stock Plan. EMPLOYEE shall be eligible to participate in the current Fresenius Medical Care AG Stock Incentive Plan, and any future stock incentive plan (individually a "Stock Plan" and collectively, the "Stock Plans"), subject to IRS approval of such respective Stock Plans. In addition to the existing options to purchase Fresenius Medical Care AG Preference Shares previously granted to EMPLOYEE (the "Existing Options"), EMPLOYEE shall be eligible to receive additional option grants in amounts as and if approved by the Fresenius Medical Care AG Managing Board.

d) Benefit Programs. EMPLOYEE shall continue to be eligible to participate in the group employee benefits programs at the senior executive level as now established or which subsequently become available.

e) Life Insurance. EMPLOYEE will be provided with life insurance in accordance with FMCNA's policy, currently capped at Four Hundred Thousand Dollars ($400,000). EMPLOYEE will be provided with the opportunity to purchase supplemental life insurance of an additional Six Hundred Thousand Dollars ($600,000) beyond the current policy of coverage at his own expense, with proof of good health.

f) Automobile. EMPLOYEE will be provided with a company car allowance of Seven Hundred Dollars ($700) paid monthly and treated as ordinary income.

g) Financial Planning/Tax Preparation. EMPLOYEE will be provided with an allowance of One Thousand Dollars ($1,000) to be paid based upon submitted documentation of expenses incurred as a result of financial planning assistance or income tax preparation. Reimbursement will be treated as ordinary income.

h) Expenses. EMPLOYEE will be reimbursed for travel and other expenses related to the performance of his duties under the Agreement and in accordance with the EMPLOYER's policies.

i) Vacation/PTO. EMPLOYEE shall be allowed to carry-over up to two hundred (200) hours from year-to-year without losing such time. EMPLOYEE shall also accrue PTO days at the maximum available to senior executives which currently provides for thirty five (35) days of PTO per year.

5. Termination of Employment. EMPLOYEE's employment hereunder may be terminated under the following circumstances:

a) Death. EMPLOYEE's employment hereunder shall terminate upon his death.

b) Total Disability. The EMPLOYER may terminate EMPLOYEE's employment hereunder upon EMPLOYEE becoming "Totally Disabled." For purposes of this Agreement, EMPLOYEE shall be "Totally Disabled" if EMPLOYEE is physically or mentally incapacitated so as to render EMPLOYEE incapable of performing EMPLOYEE's usual and customary duties under this Agreement. EMPLOYEE's receipt of Social Security disability benefits or disability benefits under a Company-sponsored long-term disability plan shall be deemed conclusive evidence of Total Disability for purpose of this Agreement; provided, however, that in the absence of EMPLOYEE's receipt of such Social Security or long-term disability benefits, the Company's Board of Directors may, in its reasonable discretion (but based upon medical evidence), determine that EMPLOYEE is Totally Disabled.

c) Voluntary Termination. EMPLOYEE may terminate his employment hereunder at any time after providing written notice to the other party. The EMPLOYEE is required to give the EMPLOYER at least thirty (30) days written notice if he wishes to terminate his employment pursuant to this provision.

2



d) Termination by the EMPLOYER for Cause. The EMPLOYER may terminate EMPLOYEE's employment for Cause at any time after providing thirty (30) days' written notice to EMPLOYEE. Such notice shall specify in reasonable detail the nature of the Cause, and during such thirty (30) day period, EMPLOYEE shall have the opportunity to cure the stated Cause, if at all possible. If EMPLOYEE fails to cure a stated Cause, or if such Cause cannot be cured, EMPLOYEE's employment hereunder shall terminate at the end of the thirty (30) day period, but without prejudice to EMPLOYEE's right to contest the existence of any stated Cause or to contest the fact that the Cause has not been cured. For purposes of this Agreement, the term "Cause" shall mean, with respect to the EMPLOYEE, any of the following: (i) conviction of EMPLOYEE of a felony; (ii) deliberate and continual refusal to satisfactorily perform employment duties reasonably requested by the EMPLOYER; (iii) fraud or embezzlement determined in accordance with the EMPLOYER's normal, internal investigative procedures consistently applied in comparable circumstances to EMPLOYEES; (iv) failure to obtain and maintain in good order any licenses required for EMPLOYEE to perform his duties under this Agreement; or (v) a breach of any of the covenants set forth in Section 7 below.

e) Termination by EMPLOYEE for Cause. This Agreement may be terminated by EMPLOYEE in the event of a breach by FMCNA of any of its obligations under this Agreement, provided EMPLOYEE gives FMCNA written notice specifying the manner in which he believes FMCNA has breached this Agreement and FMCNA has thirty (30) days from receipt of such notice to cure such breach, or in the case of other than a non-payment of money breach, if such breach cannot be cured within thirty (30) days, to commence a good faith effort to cure.

f) Notice of Termination. Any termination by the EMPLOYER or the EMPLOYEE under this Agreement shall be communicated by notice of termination to the other party hereto. For purposes of this Agreement, a Notice of Termination shall mean a notice in writing which shall indicate the specific termination provision in this Agreement relied upon to terminate EMPLOYEE's employment and shall set forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of EMPLOYEE's employment under the provision so indicated.

6. Compensation Following Termination of Employment.

a) Under all circumstances, upon separation, the EMPLOYEE shall be entitled to receive:

    (i)    Any accrued but unpaid Base Salary for services rendered to the date of termination;

    (ii)    Accrued PTO;

    (iii)    Any benefits to which EMPLOYEE may be entitled upon termination pursuant to the plans, policies and arrangements referred to in Section 4 hereof shall be determined and paid in accordance with the terms of such plans, policies and arrangements;

    (iv)    A payment equal to twenty four (24) months Base Salary, at the rate in effect on the date of termination of employment, such amount to be paid as salary continuation with benefits. EMPLOYEE may request and FMCNA will agree that any remaining salary continuation be paid in a lump sum. If a lump sum is selected, all benefits entitlement will cease as of the date of such payment; and

    (v)    A pro-rated portion of the EMPLOYEE's annual management bonus based upon termination of work date.

b) At time of separation, EMPLOYEE may exercise one hundred percent (100%) of his vested stock options. If the terms of any award and governing plan are silent, with respect to termination of employment, such award will lapse immediately upon such termination. Ben Lipps, President and Chief Executive Officer, will use his



3

best effort to recommend to the Management Board of FMCAG that EMPOYEE be granted up to two (2) years from the date of separation to exercise vested stock options.

7.  **Non-Disclosure/Non Competition Agreement.** EMPLOYEE acknowledges that during the term of employment with EMPLOYER, he will have access to and become acquainted with Confidential Information of the EMPLOYER. Confidential Information means all information related to the present or planned business of FMCNA that has not been released publicly by authorized representatives of FMCNA, and shall include but not be limited to, trade secrets and know-how, inventions, marketing and sales programs, employee, customer, patient and supplier information, information from patient medical records, financial data, pricing information, regulatory approval and reimbursement strategies, data, operations and clinical manuals.

EMPLOYEE agrees not to use or disclose, directly or indirectly, any Confidential Information of FMCNA at any time and in any manner, except as required in the course of his employment with FMCNA or with the express written authority of FMCNA.

EMPLOYEE understands that his non-disclosure obligations will continue following his termination of employment.

EMPLOYEE agrees that during the term of his employment, and for a period of two (2) years immediately after, he leaves the employment of FMCNA for any reason or the end of the period during which EMPLOYEE continues to receive salary continuation after leaving the employment of FMCNA, whichever is greater, EMPLOYEE will not directly or indirectly for his own benefit or the benefit of others:

a)  render services for a competing organization in connection with competing products as an employee, officer, agent, broker, consultant, partner, stockholder (except that EMPLOYEE may own three percent (3%) or less of the equity securities of any publicly-traded company);

b)  hire or seek to persuade any employee of FMCNA to discontinue employment or to become employed in any competing organization or seek to persuade any independent contractor or supplier to discontinue its relationship with FMCNA; and

c)  solicit, direct, take away or attempt to take away any business or customers of FMCNA.

Nothing in this Agreement would preclude EMPLOYEE from working for a competitor of FMCNA subsequent to termination of EMPLOYEE's employment provided EMPLOYEE will not be engaged, directly or indirectly, in any business in which FMCNA is actively engaged at the time of EMPLOYEE's termination or in any new business which FMCNA is in the process of setting up in which EMPLOYEE had direct involvement while employed by FMCNA. EMPLOYEE also agrees to inform FMCNA of any such employment with a competitor before beginning such employment.

8.  **Enforcement of Covenants.**

a)  EMPLOYEE agrees that if the EMPLOYER determines that EMPLOYEE has breached any of the covenants set forth in Section 7 at any time, the EMPLOYER shall have the right, notwithstanding anything herein to the contrary, to discontinue any or all amounts otherwise payable to EMPLOYEE hereunder. Such termination of employment or discontinuance of payments shall be in addition to and shall not limit any and all other rights and remedies that the EMPLOYER may have against EMPLOYEE.

b)  **Right to Injunction.** EMPLOYEE acknowledges that a breach of the covenants set forth in Section 7 hereof will cause irreparable damage to the EMPLOYER with respect to which the EMPLOYER's remedy at law for damages will be inadequate. Therefore, in the event of breach or anticipatory breach of the covenants set forth in this section by EMPLOYEE, EMPLOYEE and the EMPLOYER agree that the EMPLOYER shall be entitled to the following particular forms of relief, in addition to remedies otherwise available to it at law or equity: injunctions, both preliminary and permanent, enjoining or restraining such breach or anticipatory breach

4



and EMPLOYEE hereby consents to the issuance thereof forthwith and without bond by any court of competent jurisdiction.

c) **Separability of Covenants.** The covenants contained in Section 7 hereof constitute a series of separate covenants, one for each applicable State in the United States and the District of Columbia, and one for each applicable foreign country. If in any judicial proceeding, a court shall hold that any of the covenants set forth in Section 7 exceed the time, geographic, or occupational limitations permitted by applicable laws, EMPLOYEE and the EMPLOYER agree that such provisions shall and are hereby reformed to the maximum time, geographic, or occupational limitations permitted by such laws. Further, in the event a court shall hold unenforceable any of the separate covenants deemed included herein, then such unenforceable covenant or covenants shall be deemed eliminated from the provisions of this Agreement for the purpose of such proceeding to the extent necessary to permit the remaining separate covenants to be enforced in such proceeding. EMPLOYEE and the EMPLOYER further agree that the covenants in Section 7 shall each be construed as a separate agreement independent of any other provisions of this Agreement, and the existence of any claim or cause of action by Employee against the Company whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of any of the covenants in Section 7.

9. **FMCNA Documents and Equipment.** All documents and equipment relating to the business of FMCNA, whether prepared by EMPLOYEE or otherwise coming into EMPLOYEE's possession, are the exclusive property of FMCNA, and must not be removed from the premises of FMCNA except as required in the course of employment. Any such documents and equipment must be returned to FMCNA when EMPLOYEE leaves the employment of FMCNA.

10. **Withholding of Taxes.** The EMPLOYER may withhold from any compensation and benefits payable under this Agreement all applicable federal, state, local, or other taxes.

11. **Entire Agreement and Amendments.** This Agreement shall constitute the entire agreement between the parties and supersedes all existing agreements between them, whether oral or written, with respect to the subject matter hereof. Any waiver, alteration, or modification of any of the provisions of this Agreement, or cancellation or replacement of this Agreement shall be accomplished in writing and signed by the respective parties.

12. **Notices.** Any notice, consent, request or other communication made or given in connection with this Agreement shall be in writing and shall be deemed to have been duly given when delivered or mailed by registered or certified mail, return receipt requested, to those listed below at their following respective addresses or at such other address as each may specify by notice to the others:

To the Employer:

> Fresenius Medical Care North America
> Corporate Headquarters
> Two Ledgemont Center
> 95 Hayden Avenue
> Lexington, MA 02420-9192
> Attention: Vice President, Human Resources

To Employee:

At the address for Employee set forth above

13. **Governing Law.** This Agreement shall be construed in accordance with, and the rights of the parties shall be governed by, the laws of the Commonwealth of Massachusetts.

5



14. **Separability.** If any term or provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such term or provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by the undersigned duly authorized persons as of the day and year first stated above.

NATIONAL MEDICAL, INC. d/b/a
FRESENIUS MEDICAL CARE
NORTH AMERICA, EMPLOYER

WITNESS

Denise Carpenter

By: _Ruc Powell_

R. Maurice (Rice) Powell
President
Dialysis Products Division

4/25/03
(DATE)

WITNESS

MOHSEN REIHANIFAM

(Employee Signature)

5/14/03
(DATE)

6

# EXHIBIT D



# Fresenius Medical Care

## Internal Memo

TO:     FMCNA Executives

FROM:    Brian O'Connell

DATE:    December 18, 2008

SUBJECT:    REVISED AMENDMENT

**Fresenius Medical Care**
**North America**
Corporate Headquarters
Human Resources and Administration

920 Winter Street
Waltham, MA 02451-1457

Phone: (781) 699-9205
Fax:   (781) 699-9734

Enclosed is a revised amendment to your employment agreement. The purpose of this amendment is to prevent you from experiencing early federal income taxation and excise taxes. You must sign this amendment and return to me by December 22. **We cannot back date the amendment.**

Your employment agreement contains provisions that call for, under certain circumstances, payments to be made to you after your termination of employment. These provisions create the possibility that you may, in the future, receive payments that would be considered to be "deferred compensation" under Section 409A of the Internal Revenue Code. Payment of deferred compensation, in a manner that fails to comply with IRS regulations under Section 409A, will give rise to early income taxation and additional excise taxes. To avoid these adverse tax consequences, your employment agreement must be revised during 2008.

Your agreement provides that you will be paid 24 months' Base Salary in the event that Fresenius terminates your employment without cause (i.e., fires you without cause). The agreement generally provides that you may elect to receive your Severance Pay in either a lump sum or in regular paychecks. By electing the latter payment method, you could continue to receive certain employee benefits. This time-of-payment election causes a problem under Code Section 409A, which generally requires that an agreement establish an exact time that payments will be made. However, the IRS regulations provide that amounts up to the "Separation Pay Limit" are exempt from Code Section 409A.

Under IRS regulations, the Separation Pay Limit is two times the Lesser of (A) or (B), where "(A)" is your base salary plus bonus earned during the calendar year preceding your termination, "(B)" is the adjusted compensation limit in effect for the year of the termination. The limit in place for 2009 will be $245,000. Because your Base Salary exceeds $245,000, we can compute your applicable "Separation Pay Limit "using only part "(B)" of the formula. Thus during 2009, your applicable Separation Pay Limit would be $490,000.

Based on the foregoing, the amendment to your employment agreement reflects the following with respect to time-of-payment elections of your Severance Pay: If you make no election, your Severance Pay will be paid over 24 months in regular bi-weekly paychecks; you will remain eligible for benefits, and your checks will be reduced by the applicable benefit deductions. However you may elect to receive up to $490,000 (for 2009) of your Severance Pay in a lump sum. If you elect to receive a lump sum, the remainder of your Severance Pay will be paid on bi-weekly paychecks. Those paychecks will begin as soon as practicable following the six-month anniversary of your employment termination date, and will be paid over an 18-month period. If you elect to receive a lump sum, your eligibility for benefits will terminate.

THIS AMENDMENT ("Amendment") amends the Employment Agreement dated as of April, 2003 (the "Agreement"), by and between Fresenius Medical Care North America ("FMCNA" or the "EMPLOYER") and Mohsen Reihanifam ("EMPLOYEE"). This Amendment is effective as of January 1, 2009.

I.      Section 5(c) of the Agreement is hereby restated to read as follows:

c)      Voluntary Termination. EMPLOYER or EMPLOYEE may terminate EMPLOYEE's employment hereunder at any time after providing written notice to the other party. The EMPLOYEE is required to give the EMPLOYER at least thirty (30) days' written notice if he wishes to terminate his employment pursuant to this provision.

II.     Section 6 of the Agreement is hereby restated in its entirety to read as follows:

6.      **Compensation Following Termination of Employment.**

(a)     Under all circumstances, upon termination the EMPLOYEE shall be entitled to receive:

      (i)     Any accrued but unpaid Base Salary for services rendered to the date of termination;

      (ii)    Accrued PTO; and

      (iii)   Any benefits to which EMPLOYEE may be entitled upon termination pursuant to the plans, policies and arrangements referred to in Section 4 hereof shall be determined and paid in accordance with the terms of such plans, policies and arrangements.

(b)     In addition to amounts payable under paragraph (a), in the event that EMPLOYEE's employment hereunder is terminated, the EMPLOYEE shall also be entitled to receive payments as described in subparagraphs (i) and (ii) below:

      (i)     A payment equal to twenty-four (24) months' Base Salary, at the rate in effect on the date of termination of employment (the "Severance Pay"). The Severance Pay shall be paid as salary continuation with benefits, but EMPLOYEE may elect, under FMCNA's election procedures, to receive a portion of the Severance Pay in the form of a lump sum; provided however that such lump sum may not exceed the 409A Separation Pay Limit (as defined below). If such a lump sum is elected, it will be paid as soon as practicable following EMPLOYEE's date of termination, but in any event no later than 90 days following such date of termination. If EMPLOYEE elects to receive a lump sum, all benefits entitlement will cease as of EMPLOYEE's date of termination. If EMPLOYEE elects a lump sum, any amount by which the Severance Pay exceeds the amount of the lump sum will be paid to EMPLOYEE by FMCNA on bi-weekly paychecks, in accordance with FMCNA's regular payroll practices, over an eighteen (18) month period beginning as soon as practicable after (but in any case within 90 days after) the six-month anniversary of

1

EMPLOYEE's date of termination. (Thus for example, if EMPLOYEE's total Severance Pay is $656,602, and the 409A Separation Pay Limit is $490,000, and EMPLOYEE elects to receive a lump sum payment of $490,000, then the remaining $166,602 of Severance Pay will be paid to EMPLOYEE on bi-weekly paychecks of approximately equal amount over the eighteen (18) month period beginning as soon as practicable after the six-month anniversary of EMPLOYEE's termination date.)

(ii)     A pro-rated portion of the EMPLOYEE's annual bonus based upon termination of work date. Payment of such bonus shall be made in a single lump sum payment within the 90-day period following the date that payment is made to still-active employees participating in such bonus arrangement (such payment date is the "Regular Incentive Compensation Payment Date"); provided however, that if EMPLOYEE is a Specified Employee (as defined below), such payment shall be made within 90 days following the later of (x) the Regular Incentive Compensation Payment Date, and (y) the date that is six months after EMPLOYEE's date of termination.

(iii)    For purposes of this Section 6, the following definitions shall apply:

(A)    "409A Separation Pay Limit" means two times the lesser of (x) EMPLOYEE's base salary plus bonus earned from services provided to EMPLOYER during the calendar year preceding the year of the termination of employment; and (y) the adjusted compensation limit under Code section 401(a)(17) in effect for the year of the termination.

(B)    "Specified Employee" means an employee who is a specified employee under Treas. Reg. § 1.409A-1(i), as determined under the FMCNA Deferred Compensation Plan.

(c)    At time of separation, EMPLOYEE may exercise on hundred percent (100%) of his vested stock options. If the terms of any award and governing plan are silent, with respect to termination of employment, such award will lapse immediately upon such termination. Ben Lipps, President and Chief Executive Officer, will use his best effort to recommend to the Management Board of Fresenius Medical Care AG & Co., KGaA that EMPLOYEE be granted up to two (2) years from the date of separation to exercise vested stock options.

*[signatures follow]*

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed by the undersigned duly authorized persons as of the date(s) set forth below.

**NATIONAL MEDICAL CARE, INC. d/b/a**
**FRESENIUS MEDICAL CARE**
**NORTH AMERICA, EMPLOYER**

**WITNESS**

_____

By: _____      _____
    (Officer Signature)                              (DATE)

Name: _____

Title: _____

**MOHSEN REIHANIFAM**

**WITNESS**

_____

_____      _____
(Employee Signature)                              (DATE)

C-1105661v2                                    3

# PROOF OF SERVICE

I, the undersigned, hereby declare that I am over the age of 18 years and not a party to the above-captioned action; that my business address is 2977 Ygnacio Valley Road, #267, Walnut Creek, CA 94598.

On February 14, 2013, the following document(s) was served:

- **FIRST AMENDED COMPLAINT; AND**
- **THIS PROOF OF SERVICE**

on the parties to this action at the following address(es):

**Lisa J. Damiani, Esq.**
**DAMIANI LAW GROUP APC**
**701 B Street, Suite 1110**
**San Diego, CA 92101**

**Juanita Brooks, Esq.**
**FISH & RICHARDSON PC**
**12390 El Camino Real**
**San Diego, CA 92130**

**Attorneys for Fresenius Medical Care**
**North America, Ben Lipps and R.**
**Maurice Powell**

( ) **(BY MAIL)** I caused a true copy of each document(s) to be placed in a sealed envelope with first-class postage affixed and placed the envelope for collection. Mail is collected daily at my office and placed in a United States Postal Service collection box for pickup and delivery that same day.

☒ (BY MESSENGER) I caused a true copy of each of the document(s) listed above to be submitted to an authorized courier and/or process server for hand deliver on the date noted herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 14, 2013, at Walnut Creek, California.

H. Larry Elam

LAW OFFICE OF H. LARRY ELAM III
2977 Ygnacio Valley Road, #267
Walnut Creek, CA 94598
Tel: (925) 465-5151
Fax: (925) 465-5152

**PROOF OF SERVICE**