JUANITA R. BROOKS (CSB#75934)
FISH & RICHARDSON PC
12390 El Camino Real
San Diego, CA 92130
Tel (858) 678-5070
Fax (858) 678-5099
brooks@fr.com

LISA J. DAMIANI (CSB#137968)
DAMIANI LAW GROUP APC
701 B Street, Suite 1110
San Diego, California 92101
Tel (619) 239-0170
Fax (619) 239-0216
ljdamiani@damianilawgroup.com
Attorney for Defendant,
FRESENIUS MEDICAL CARE NORTH AMERICA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## (SOUTHERN DIVISION—HONORABLE DAVID O. CARTER)

| | |
|---|---|
| MOHSEN REIHANIFAM,<br><br>          Plaintiff,<br><br>     v.<br><br>FRESENIUS MEDICAL CARE<br>NORTH AMERICA,<br><br>          Defendant. | CASE NO.: SACV12-1580-DOC (JPRx)<br><br>**DEFENDANT FRESENIUS<br>MEDICAL CARE NORTH<br>AMERICA'S MOTION FOR<br>JUDGMENT AS A MATTER OF<br>LAW UNDER FRCP 50(a)**<br><br>Judge:  Hon. David O. Carter |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................1

II. LEGAL STANDARD APPLICABLE TO THE MOTION FOR JUDGMENT AS A MATTER OF LAW ................................................................4

III. PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH RETALIATION IN VIOLATION OF THE FEHA ................5

    A.    Plaintiff's Retaliation Action Must Fail as He Failed to Present Sufficient Evidence upon Which a Reasonable Jury Could Find that His Transfers, Fresenius's Election Not to Renew His Contract, and Exclusion from Meetings Were Adverse Employment Actions ..........6

    B.    Plaintiff's Retaliation Action Must Fail as He Did Not Present Sufficient Evidence upon Which a Reasonable Jury Could Find that an Alleged Adverse Employment Action Was Causally Connected to Protected Activity ...................................................................8

    C.    Plaintiff's Retaliation Claim is Time-Barred under the Fair Employment and Housing Act. ...........................................................11

    D.    Plaintiff Did Not Present Sufficient Evidence to Prove that the Alleged Unlawful Course of Conduct was Comprised of a Pattern of Activities that were Similar in Kind or Occurred with Reasonable Frequency ..12

    E.    Plaintiff did not Present Sufficient Evidence to Demonstrate that the Alleged Course of Retaliatory Conduct did not Reach a Degree of Permanence ...............................................................................15

IV. PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO SUPPORT HIS CLAIM FOR FAILURE TO PREVENT RETALIATION IN VIOLATION OF THE FEHA ................................................................18

V. PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY .........................................................................................20

VI. PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH ANY CONTRACTUAL VIOLATION OR BREACH OF CONTRACT ...................................................................................21

## <u>TABLE OF CONTENTS (continued)</u>

<u>Page</u>

VII.   PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENE TO ESTABLISH A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.......................................................................24

    A.    There Was No Breach of the Implied Covenant of Good Faith and Fair Dealing in Conjunction with the 2003 Employment Agreement .......24

    B.    There Was No Breach of the Implied Covenant of Good Faith and Fair Dealing in Conjunction with Plaintiff's At-Will Employment...........25

VIII.   PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH THAT HE IS ENTITLED TO PUNITIVE DAMAGES........27

IX.    CONCLUSION ...........................................................................28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abney v. Bd. of Trustees of the California State Univ.*,
    2013 WL 2241922 (Cal. Ct. App. May 20, 2013)................................. 19

*Akers v. County of San Diego*,
    95 Cal. App. 4th 1441 (2002) ............................................................. 6

*Barton v. New United Motor Mfg., Inc.*,
    43 Cal. App. 4th 1200 (1996) ............................................................ 21

*Brandon v. Rile Aid Corp., Inc.*
    408 F.Supp.2d 964 (E. Cal. 2006) ....................................................27

*Cal. Fair Employment & Housing Com. v. Gemini Aluminum Corp.*,
    122 Cal. App. 4th 1004 (2004) .......................................................... 19

*Callicrate v. Wadsworth Mfg.*,
    427 F.3d 1361 (Fed. Cir. 2005) .......................................................... 4

*Canovas v. Univ. of Massachusetts Med. Sch.*,
    83 Mass. App. Ct. 1123, 985 N.E.2d 413 (2013) ............................. 25

*Cherick Distributors, Inc. v. Polar Corp.*,
    41 Mass. App. Ct. 125 (1996) ........................................................... 25

*Chisholm Bros. Farm Equipment Co. v. International Harvester Co.*,
    498 F.2d 1137 (9th Cir. 1974) ............................................................ 5

*Christensen v. Kingston Sch. Comm.*,
    360 F. Supp. 212 ........................................................................25, 26

*Consolidated Edison Co. v. NLRB*,
    305 U.S. 197, 83 L. Ed. 126, 59 S. Ct. 206 (1938) ............................ 5

*Cort v. Bristol–Myers Co.*,
    431 N.E.2d 908 (Mass. 1982) ........................................................... 26

*Cucuzza v. City of Santa Clara*,
    104 Cal. App. 4th 1031 (2002) ..................................................13, 17

### TABLE OF AUTHORITIES (continued)

**Page(s)**

*Davis v. Progressive Cas. Ins. Co.*,
  2007 WL 579818 (9th Cir. 2007) ...................................................... 4

*Day v. Sears Holdings Corp.*,
  930 F. Supp. 2d 1146 (C.D. Cal. 2013) ............................................ 9

*DeRose v. Putnam Mgmt. Co.*,
  496 N.E.2d 428 (Mass. 1986) .......................................................... 28

*Do v. Cnty. of Los Angeles*,
  2011 WL 3667498 (Cal. Ct. App. Aug. 22, 2011) ............................ 18

*Dutra v. Mercy Medical Center Mt. Shasta*,
  209 Cal.App.4th 750 (2012) ............................................................ 20

*Fortune v. Nat'l Cash Register Co.*
   373 Mass. 96, 364 N.E.2d 1251 (1977) ........................................... 26

*Gardner v. City of Berkeley*,
  838 F. Supp. 2d 910 (N.D. Cal. 2012) (*Gardner*) .................... 11, 16, 17

*Gram v. Liberty Mut. Ins. Co.*,
  429 N.E.2d 21 (Mass. 1981) ............................................................ 26

*Greer v. Lockheed Martin Corp.*,
  855 F. Supp. 2d 979 (N.D. Cal. 2012) .............................................. 9

*Harris v. City of Santa Monica*,
  56 Cal. App. 4th 203 (2013) ............................................................ 8

*Harrison v. Net Centric Corp.*,
  744 N.E.2d 622 (Mass. 2001) ...................................................... 25, 26

*Hayden v. Hayden*,
  CA 921539, 1993 WL 818823 (Mass. Super. Dec. 13, 1993) ........... 22

*Henderson v. Security Pac. Nat. Bank*,
  72 Cal. App. 3d 764 (1977) ............................................................. 27

*Hughes v. Derwinski*,
  967 F.2d 1168 (7th Cir. 1992) ......................................................... 9

*JPMorgan Chase & Co., Inc. v. Casarano*,
  81 Mass. App. Ct. 353, 963 N.E.2d 108 (2012) ............................... 22

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Jurgens v. Abraham*,
    616 F. Supp. 1381 (D.Mass.1985)................................................................22

*Lakeside-Scott v. Multnomah Cnty.*,
    556 F.3d 797, 802-03 (9th Cir. 200 ...............................................................4, 7

*Landry v. Sycamore Networks, Inc.*,
    76 Mass. App. Ct. 1104, 918 N.E.2d 882 (2009) .........................................21, 23

*Lewis v. City of Fresno*,
    834 F. Supp. 2d 990 (E.D. Cal. 2011) .............................................................9, 11

*Liberty Mut. Ins. Co. v. Murad*,
    1992 Mass. App. Div. 163 (Dist. Ct. 1992)........................................................22

*Mamou v. Trendwest Resorts, Inc.*,
    165 Cal. App. 4th 686 (2008) ...............................................................................8

*Manatt v. Bank of America*,
    339 F.3d 792 ..........................................................................................................8

*Mathieu v. Norrel Corp.*,
    115 Cal.App.4th 1174 (2004) ..............................................................................27

*McRae v. Dep't of Corr. & Rehab.*,
    142 Cal. App. 4th at 386-87 .....................................................................6, 12, 13

*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*,
    103 Cal. App. 4th 1021 (2002) ............................................................................19

*Palmer v. Ted Stevens Honda, Inc.*
    193 Cal.App.3d 530 (1987) .................................................................................28

*Passantino v. Johnson & Johnson Consumer Prods.*,
    212 F.3d 493 (9th Cir. 2000) .................................................................................8

*Ray v. Henderson*,
    217 F.3d 1234 (9th Cir. 2000) ...............................................................................8

*Richards v. CH2M Hill, Inc.*,
    26 Cal. 4th 798, 29 P.3d 175 (2001) (*Richards*) ...............................13, 14, 15, 16

*Richmond v. ONEOK, Inc.*,
    120 F.3d 205 (10th Cir. 1997) ...............................................................................9

<u>**TABLE OF AUTHORITIES (continued)**</u>

**Page(s)**

*Sargent v. Tenaska, Inc.*,
  108 F.3d 5 (1st Cir. 1997)......................................................................26

*Saxonis v. City of Lynn*,
  62 Mass. App. Ct. 916, 817 N.E.2d 793 (2004) ....................................26

*Scott v. Boston Hous. Auth.*,
  CIV.A. 88-5555-E, 2003 WL 21960316 (Mass. Super. July 14,
  2003) *aff'd,* 64 Mass. App. Ct. 693, 835 N.E.2d 278 (2005) (*Scott*)............22, 23

*Taylor v. City of Los Angeles Dept. of Water and Power*,
  Cal.App.4th 1216, 1240 (2006) ...............................................................19

*Thomas v. Department of Corrections*
  77 Cal. App. 4th 507 (2000) ......................................................................6

*Touchstone Television Productions v. Superior Court*,
  208 Cal.App.4th 676 (2012) ....................................................................21

*Trovato v. Beckman Coulter, Inc.*
  192 Cal.App.4th 319 (2011) ....................................................................15

*Trujillo v. North County Transit District*,
  63 Cal. App. 4th at 284-287 ....................................................................19

*Trulsson v. Cnty. of San Joaquin Dist. Attorney's Office*,
  2014 WL 4748117 (E.D. Cal. Sept. 23, 2014) ........................................19

*United California Bank v. THC Financial Corp.*,
  557 F.2d 1351 (9th Cir. 1977) ...............................................................4, 5

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ...................................................................8

*Wright v. Shriners Hosp. for Crippled Children*,
  412 Mass. 469, 589 N.E.2d 1241 (1992)............................................25, 26

*Yanowitz v. L'Oreal USA, Inc.*,
  36 Cal. 4th 1028, 116 P.3d 1123 (2005) (*Yanowitz*) ....................................*passim*

**Statutes**

Cal. Civ. Code § 3294..................................................................................27

<u>**TABLE OF AUTHORITIES (continued)**</u>

<u>**Page(s)**</u>

Cal. Civ. Code § 3294(c)(1) .................................................................................... 27

Cal. Civ. Code § 3294(c)(2) .................................................................................... 27

Cal. Civ. Code § 3294(c)(3) .................................................................................... 27

Cal. Gov. Code § 12940(k) ............................................................................... 18, 19

Cal. Gov. Code § 12960 ........................................................................................... 11

Cal. Gov. Code 12960(d) .................................................................................. 11, 15

Fair Employment and Housing Act .......................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 50 ...................................................................................................... 4

Fed. R. Civ. P. 50(a) ............................................................................................. 1, 4

Fed. R. Civ. Proc. 50(a)(l)(B) ................................................................................... 1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, at the close of Plaintiff's case in chief, Defendant Fresenius Medical Care North America (Fresenius) will, and hereby does, move the Court for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).  The motion is made on the following grounds:

• Plaintiff failed to provide a sufficient evidentiary basis for a reasonable jury to find that he was subject to an actionable adverse employment action.

• Plaintiff failed to provide a sufficient evidentiary basis for a reasonable jury to find that any actionable adverse employment action taken by Fresenius was causally connected to protected activity.

• Plaintiff Mohsen Reihanifam (Plaintiff) failed to provide a sufficient evidentiary basis for a reasonable jury to find that he exhausted administrative remedies as required by the Fair Employment and Housing Act (FEHA).

• Plaintiff failed to provide a sufficient evidentiary basis for a reasonable jury to find that Fresenius breached a contractual term.

• Plaintiff failed to provide a sufficient evidentiary basis for a reasonable jury to find that Fresenius breached the implied covenant of good faith and fair dealing.

Because Plaintiff failed to provide sufficient evidence to support his allegations in regard to all of his causes of action (and each of them) Fresenius is entitled to judgment as a matter of law under Fed. R. Civ. Proc. 50(a)(l)(B).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The relevant factual issues necessary to determine whether Plaintiff met his burden of proof are not in dispute.  From August 1986 through August 2010, Fresenius employed Plaintiff.  Plaintiff was promoted several times, given raises, bonuses, stock options, and even interest free loans to help him during various

"personal crises."  Plaintiff's final position was Senior Advisor to the Chairman of the Board of Directors, Mr. Benjamin Lipps.

In June 2002, Fresenius entered into a written employment agreement with Plaintiff, signed by Mr. Lipps.  In April 2003, Fresenius entered into a second written employment agreement with Plaintiff to reflect his position change from President of the Western Business Unit on the services side of Fresenius to President of Research and Development on the products side of Fresenius.  Maurice Powell, presently Fresenius's CEO, signed the 2003 agreement on behalf of the company. Per the terms of the agreement, the contract would automatically renew each April 1st unless either party gave notice of the decision not to renew in writing at least thirty days in advance of its expiration.

On February 14, 2009, Fresenius sent Plaintiff a written notice of its intent not to renew the agreement.  The written employment agreement expired at the end of March 2009 by its own terms. From April 1, 2009 until his termination of employment on August 21, 2010, Plaintiff continued to work for Fresenius as an employee at-will.  Plaintiff's last position with Fresenius was Senior Advisor to Mr. Ben Lipps.

Throughout his employment with Fresenius, Plaintiff never received a reduction in his base pay.  Even upon taking the new at will position, Fresenius gave Plaintiff a pay raise, bonus, and continued benefits.  Plaintiff stayed on at-will as the Senior Advisor to the Chairman of the Board of Directors, making over $350,000.00 a year, for over one year prior to his termination in August 2010.  In order to ensure that Plaintiff's termination would not leave him unemployed, Plaintiff was not terminated until after he was appointed CEO of a new company – Nephcor, Inc. Fresenius invested $1,000,000.00 in Nephcor on the condition that Plaintiff be given the role of CEO.  Plaintiff voluntarily accepted the position of CEO at Nephcor.

Plaintiff now alleges that he was subject to adverse employment actions while employed with Fresenius.  Plaintiff provided uncorroborated testimony regarding

four alleged adverse employment actions: (1) the 2002 transfer from his position as President Dialysis Services West Business Unit to President of Dialysis Products Research & Business Development, Dialysis Products Division; (2) the 2009 non-renewal of his written contract as President of Research and Development and transfer to the newly created position of Senior Advisor to the Chairman of the Board; (3) a systematic exclusion from professional meetings during Plaintiff's time as President of R&D; and (4)Plaintiff's termination in August 2010.  Plaintiff alleges these acts comprised a continuous pattern of behavior aimed at retaliating against him for reporting alleged discrimination and/or harassment targeting minorities.

Plaintiff's claims, however, must fail as a matter of law.  Plaintiff's presented evidence in support of his allegations is insufficient for any reasonable jury to find in his favor.  On the retaliation and failure to prevent retaliation claims, neither the position transfers, nor the alleged exclusion from meetings, had a detrimental effect on his employment.  Plaintiff failed to prove that the alleged retaliatory acts were tied to a protected activity; and further, each alleged retaliatory act occurred more than two years prior to his filing of a claim with the Department of Fair Employment and Housing (DFEH).  The contract claim fails because Plaintiff conceded that Fresenius properly followed the contractually specified procedure for notification of its intent not to renew the contract, and that he was terminated from the company more than one year after the contract expired.  Likewise, Plaintiff failed to prove that Fresenius breached the covenant of good faith and fair dealing because the evidence showed that Fresenius paid Plaintiff all wages or other compensation earned during the term of the contract and had no duty to pay him a two year severance when he was terminated from his at will position.   Thus, as explored below, even construing the evidence in the light most favorable to Plaintiff, his claims are unproven and judgment against him, as a matter of law, is proper.

## II. LEGAL STANDARD APPLICABLE TO THE MOTION FOR JUDGMENT AS A MATTER OF LAW

A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  Fed. R. Civ. P. 50.  The motion must specify the judgment sought and the law and facts which entitle the movant to that judgment.  *Id.*  The motion may be made as to individual allegations, specific issues, or all claims. *See Davis v. Progressive Cas. Ins. Co.,* 2007 WL 579818, at * 1(9th Cir. 2007).

The motion tests the sufficiency of the evidence offered in support of the opposing party's causes of action.  FRCP Rule 50(a) provides:

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a).

A moving party is entitled to a judgment as a matter of law unless, "viewing the evidence as a whole, 'there is substantial evidence present that could support a finding, by reasonable jurors, for the nonmoving party." *United California Bank v. THC Financial Corp.,* 557 F.2d 1351, 1356 (9th Cir. 1977) (citing *Quichocho v. Kelvinator Corp.,* 546 F.2d 812, 813 (9th Cir. 1976)).  "Substantial evidence" means "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg.,* 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir. 1992)).  Such evidence cannot be supported by mere "speculation" or "threadbare conclusory statements" in lieu of significant and considerable proof. *Lakeside-Scott v. Multnomah Cnty.,* 556 F.3d 797, 802-03 (9th Cir. 2009) (citing *Barnes v. Arden Mayfair, Inc.,* 759 F.2d

676, 680-81 (9th Cir. 1985)).  Indeed, "[s]ubstantial evidence is more than a mere scintilla." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 83 L. Ed. 126, 59 S. Ct. 206 (1938); *Chisholm Bros. Farm Equipment Co. v. International Harvester Co.,* 498 F.2d 1137, 1140 (9th Cir. 1974). "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion ... is proper." *United California Bank,* 557 F.2d at 1356 (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969)).

Plaintiff completed his case in chief and rested.  He had an opportunity to present evidence and testimony in support of his claims against Fresenius.  Plaintiff, however, failed to present substantive and verifiable proof  to the jury, substituting instead conjecture, speculation, and conclusory statements.

## III.   PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH RETALIATION IN VIOLATION OF THE FEHA

Plaintiff alleges that he was unlawfully retaliated against, under the provisions of FEHA, as a result of his reports of alleged improper activity at Fresenius.  To succeed in a retaliation claim, a plaintiff must prove by a preponderance of the evidence that "(1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042, 116 P.3d 1123, 1130 (2005) (*Yanowitz*). Plaintiff claims that he was retaliated against in 2002, 2005, 2009, and 2010 as a result his complaints regarding unfair treatment.  However, during his presentation of his case-in-chief, Plaintiff's own testimony demonstrated that his claims fail as a matter of law.

### A. Plaintiff's Retaliation Action Must Fail as He Failed to Present Sufficient Evidence upon Which a Reasonable Jury Could Find that His Transfers, Fresenius's Election Not to Renew His Contract, and Exclusion from Meetings Were Adverse Employment Actions

An employee seeking recovery on a theory of unlawful retaliation must demonstrate that he has been subjected to an adverse employment action which "materially affects the terms, conditions, or privileges of employment." *McRae v. Dep't of Corr. & Rehab.,* 142 Cal. App. 4th at 386-87 (citing *Yanowitz, supra,* 36 Cal.4th at 1051–1052)."A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." (*Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1455 (2002).  "'[W]orkplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action…'" *McRae*, 142 Cal. App. 4th at 386-87 (quoting *Thomas v. Department of Corrections* 77 Cal. App. 4th 507, 511 (2000)).  Rather, a plaintiff must demonstrate that the employer's retaliatory actions had a detrimental and substantial effect on his employment. *Akers,* 95 Cal. App. 4th at 1455; *Thomas,* 77 Cal. App. 4that 510–11.

"A transfer is not an adverse employment action when it is into a comparable position that does not result in substantial and tangible harm." *McRae*, 142 Cal. App. 4th at 393.  The evidence shows that in 2002 Plaintiff was laterally transferred from one executive position within Fresenius to another.  Plaintiff did not receive any decrease in pay, bonuses or other employment benefits as result of the transfer.  Plaintiff's lone discernable complaint regarding his 2002 transfer is that he was "demoted" in title and responsibility.  In his testimony, Plaintiff cited the fact that the President of R&D position was historically a "vice-president" position, and that the person who assumed the role after Plaintiff was called a "vice-president."  Plaintiff did not present any evidence which showed that this historical title disparity affected a material condition of his employment.  In fact, Plaintiff's quibble about his "President" title, which he held for about 7 1/2 years, reveals that his opposition

to the transfer stemmed from his emotional and personal displeasure with Fresenius's action, and not from any material or detrimental effect on his employment status.

Plaintiff's claim that Fresenius's failure to renew his contract was an adverse employment action must also fail.  The contract was one for a term of a year that would renew unless one party elected to not renew it.  Fresenius had the right to notify Plaintiff that it would not renew the contract for another year.  Even after the written contract expired, Fresenius continued to employ Plaintiff in an at will capacity at a higher base rate of pay for another eighteen months.

Likewise, Plaintiff failed to present sufficient evidence for a reasonable jury to conclude that the alleged systematic exclusion from meetings constituted an adverse employment action.  Although Plaintiff opined that the exclusion from the meetings impeded his ability to do his job and negatively affected his career with Fresenius, he failed to support that assertion with specific facts.  Bald assertions supported merely by speculation do not constitute sufficient evidence.  *Lakeside-Scott v. Multnomah Cnty.,* 556 F.3d at 802-03, *supra*.  By relying solely on his opinion and speculation regarding the exclusion, Plaintiff failed to present sufficient evidence for a reasonable jury to find for him.  Plaintiff had the burden to demonstrate that the alleged exclusion harmed his employment in some demonstrable and material way.  Plaintiff did not cite a single meeting or group of meetings (from which he was excluded) which caused such harm.

The only cognizable adverse employment action in the present case is Plaintiff's August 21, 2010 termination from the Fresenius organization.  With regard to that action, Plaintiff has failed to tie it to any protected activity.

**B.   Plaintiff's Retaliation Action Must Fail as He Did Not Present Sufficient Evidence upon Which a Reasonable Jury Could Find that an Alleged Adverse Employment Action Was Causally Connected to Protected Activity**

Finally, Plaintiff failed to present adequate evidence to support his claim that the alleged adverse action was causally connected to protected activity.  To prevail in a retaliation claim under FEHA, Plaintiff must establish that the alleged protected activity under the FEHA was a "substantial motivating reason" for the retaliatory act. *Harris v. City of Santa Monica*, 56 Cal. App. 4th 203, 232 (2013).  Plaintiff must first demonstrate that he engaged in "protected activity" by opposing practices proscribed by FEHA, filing a complaint, testifying, or assisting in a proceeding related to FEHA claims. Then, Plaintiff must show a demonstrable "causal link" between the alleged retaliatory animus and the alleged adverse action. *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686 (2008).  Plaintiff presented no direct evidence, other than his opinion and speculation, which supports a finding that there was a causal connection between any FEHA protected activity and Fresenius's alleged adverse act.

Plaintiff argues that the temporal proximity of the alleged adverse actions to the alleged FEHA protected activity is circumstantial evidence of a retaliatory animus.  To establish a causal link on the basis of temporal proximity, Plaintiff must prove that the challenged action occurred "close on the heels of the protected activity." *Ray v. Henderson,* 217 F.3d 1234, 1244 (9th Cir. 2000); *see also Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 507 (9th Cir. 2000) (requiring that the challenged action take place "within a reasonable period of time" after the protected activity). The Ninth Circuit has held that events occurring nine months apart are not sufficient to establish a causal link between a protected activity and alleged retaliatory conduct. *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir. 2002) (finding that an 18-month lapse was too long to create an inference of causation); *Manatt v. Bank of America,* 339 F.3d 792, 802

(holding that nine (9) months between the protected activity and the adverse action was not sufficiently close in time to establish a causal link).  Other judicial circuits interpreting Title VII retaliation claims (which contain a similar causal connection requirement) have found even shorter time periods do not support a causal link.  *See*, *e.g. Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (finding that a three (3) month lapse between protected activity and retaliatory act was too long to support a finding of temporal proximity); *Hughes v. Derwinski,* 967 F.2d 1168, 1174–75 (7th Cir. 1992) (finding that a four (4) month lapse was too long, as well).

In his case-in-chief, Plaintiff presented several email communications which he described as his complaints regarding Fresenius's alleged unlawful activity.  The last such email prior to his termination is memorialized in JX0075, a January 13, 2010 email addressed to Mr. Lipps about Mr. Powell's alleged retaliatory act of excluding him from a Renal Research Institute ("RRI") board meeting.  Plaintiff's comments contained in JX0075 do not, however, comprise protected activity under the FEHA.  To classify as protected activity, Plaintiff's communication "must have alerted [Fresenius] to his belief that discrimination, not merely unfair personnel treatment, had occurred."  *Lewis v. City of Fresno*, 834 F. Supp. 2d 990, 1002 (E.D. Cal. 2011) (citations omitted)."Under FEHA an employee's opposition must be sufficient to put an employer on notice as to what conduct it should investigate." *Greer v. Lockheed Martin Corp.*, 855 F. Supp. 2d 979, 987 (N.D. Cal. 2012) (international quotations omitted); *see also Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1177 (C.D. Cal. 2013) (citing *Peters v. District of Columbia,* 873 F.Supp.2d 158, 202 (D.D.C.2012) ("While informal complaints to management may constitute protected activity, the plaintiffs must clearly complain about discriminatory treatment.")).  Plaintiff's comments in JX0075 do not make any allusion to *racial* discrimination, unlawful employment practices, or anything else proscribed by the FEHA.  Plaintiff's email does not even reference, let alone oppose, discriminatory acts actionable under the FEHA.  The evidence showed that

it was Mr. Lipps who had made the decision to exclude Plaintiff from the meeting. It was not necessary for his new role. Plaintiff was told that he could attend the RRI meeting, but not the board meeting.

The last complaint of Plaintiff prior to the January 13, 2010 complaint is highlighted in JX0046, his May 13, 2009 email to Brian O'Connell. In that email, *fifteen months prior to his termination*, he states that he was wrongfully "pushed out of [his] position." Such a length of time, by law, is insufficient to create a causational inference due to temporal proximity. Even if Plaintiff's communication memorialized in JX0075 is regarded as a protected activity, it still lacks a temporal link to his termination. A full *seven months* elapsed between Plaintiff's email in JX0075 and his termination from Fresenius.

The vast length of time between the alleged protected activities and the alleged adverse action is just too long for a reasonable jury to find a causal connection. Moreover, the termination occurred only after Fresenius reached a deal with Nephcor to install Plaintiff as CEO of the company; this was the true motivation for the termination. As such, Plaintiff failed to demonstrate that his termination was causally linked to protected activity.

Similarly, even if Fresenius's notification to Plaintiff in February 17, 2009 that it would not renew the written contract could be construed as an adverse employment action, such act was not tied to any protected activity. Plaintiff alleged that Mr. Powell decided to allow Plaintiff's contract to expire because Plaintiff's complaint about the September 2008 investigation of Rashmi Murthy was "the last straw in breaking the camel's back."

At his deposition, Plaintiff testified that the IT group, the operations group and the manufacturing group in Walnut Creek caused the investigation of Rashmi Murthy in retaliation for the R& D engineers complaining about the response time from the IT group. April 17, 2014 Deposition of Mohsen Reihanifam, Vol. II at

429:3-12; 4306-24.  Plaintiff's complaint was not clearly one of discrimination or retaliation under FEHA.

The only other complaints remotely related to FEHA activity occurred in July 2005, almost four years before Plaintiff was notified that his contract would not be renewed.  Because Plaintiff could not establish a causal link between FEHA protected activity and an adverse employment action, his retaliation and failure to prevent retaliation claims failed.

### C.    Plaintiff's Retaliation Claim is Time-Barred under the Fair Employment and Housing Act.

Pursuant to California Government Code § 12960, "[n]o complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred."  Cal. Gov. Code § 12960(d).  "The statute is generally calculated from the date the plaintiff files his or her complaint…" with the DFEH and/or the Equal Employment Opportunity Commission (EEOC). *Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 918 (N.D. Cal. 2012) (*Gardner*). It is uncontroverted that Plaintiff filed his complaint with the DFEH on August 16, 2011.  The only alleged adverse employment action which occurred within one year of that date is Plaintiff's termination from Fresenius on August 20, 2010.  Still, Plaintiff claims that Fresenius should be liable for alleged adverse actions which occurred in 2002, 2005, and 2009 – actions which, indisputably, occurred outside the statute of limitations period.

Under California's continuing violation doctrine, an employer may be liable for actions that take place outside the limitations period if – and only if – the actions are sufficiently linked to unlawful conduct which occurred within the limitations period.  *Lewis v. City of Fresno*, 834 F. Supp. 2d 990, 995 (E.D. Cal. 2011); *see also Yanowitz,* 36 Cal. App. 4th at 1057.  The doctrine is only applicable where alleged retaliation is based on a "temporally related and continuous course of conduct." *Yanowitz*, 36 Cal.4th at 1057-58.  Infrequent and unrelated retaliatory activities, even

if actionable, do not comprise the basis for a continuing violation allegation. *Id.* To sustain a continuing action claim, Plaintiff must demonstrate that Fresenius engaged in a pattern of activities that "(1) [are] sufficiently similar in kind—recognizing… that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms; (2) have occurred with reasonable frequency; and (3) have not acquired a degree of permanence." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1059, 116 P.3d 1123, 1142 (2005) (citing *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823, 29 P.3d 175, 190 (2001) (*Richards*)).  Absent a demonstration that Fresenius's alleged pattern of activity was comprised of individual retaliatory events of sufficient similarity, frequency, and non-permanence, Plaintiff's claim of a continuing violation must fail.

> **D.    Plaintiff Did Not Present Sufficient Evidence to Prove that the Alleged Unlawful Course of Conduct was Comprised of a Pattern of Activities that were Similar in Kind or Occurred with Reasonable Frequency**

Plaintiff's allegations fall well short of this standard.  First, in regard to similarity, Plaintiff claims that he suffered various forms of retaliation at the hands of different actors over a period spanning eight years.  Similarity sufficient to satisfy the continuing violation doctrine's requirement is not found where the "allegedly wrongful acts were taken by many different persons, for many different reasons…" *McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 391 (2006) (*McRae*). Plaintiff testified that the alleged retaliatory acts were perpetrated by Mr. Lipps (*e.g.* JX0015), and then later by Mr. Powell (*e.g.* JX0046), and somewhere in between, by various Fresenius executives and employees, including whole Fresenius departments – Information Technology and Marketing (*e.g.* JX0044, JX0087, JX0095, JX0124).There is no similarity between the actors who perpetrated these alleged violations of law.

1    The alleged adverse actions are likewise various; Plaintiff complained of

2    demotion, transfer, contractual violations, exclusion from meetings, and termination,

3    all allegedly perpetrated with varying retaliatory motives.  Even the alleged

4    protected activity differed in each instance: Plaintiff testified that the 2002 transfer

5    was a result of retaliation based on his complaints regarding Mr. Lipps, while the

6    2009 transfer was a result of retaliation based on his complaints regarding Mr.

7    Powell, while the various other alleged adverse actions resulted from retaliation

8    based on his numerous other complaints about different individuals.

9        In *McRae*, the plaintiff argued that she had been subjected to differing adverse

10   actions, including a transfer to a different position.  *McRae*, 142 Cal. App. 4th at

11   391.  The court found, however, that the alleged activities were perpetrated by

12   different actors, involving different subjects and motivations, precluding a

13   successful continuing action claim.  *Id.* at 391-92.  The same is true here: the fact

14   that Plaintiff's allegations are against different Fresenius employees who acted at

15   different times with different motivations forestalls a finding that the alleged

16   adverse acts constituted a continuous, similar pattern of activities.  Accordingly,

17   Plaintiff has failed to demonstrate sufficient evidence that the alleged adverse

18   employment acts are "similar" in nature, as required by the continuous violation

19   doctrine.

20       Likewise, Plaintiff failed to demonstrate that Fresenius's alleged adverse

21   actions occurred with the requisite frequency to be considered part of a continuing

22   course of conduct.  To invoke the continuing violation doctrine, Plaintiff must

23   demonstrate that the alleged adverse employment actions were frequent in nature.

24   *Yanowitz* 36 Cal.App.4th at 1059.  The *Richards* court asked the question in this

25   way: "Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the

26   nature of an isolated work assignment or employment decision?"  *Richards*, 26 Cal.

27   4th at 814; *see also Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1042

28   (2002) (distinguishing a collection of isolated employment decisions from a

13       Defendant's Motion for Judgment as a Matter of Law
Case No.: SACV12-1580 DOC (JPRx)

1  continuing course of conduct).  In *Yanowitz*, the court found sufficient frequency

2  only where the alleged retaliatory actions occurred "steadily" over a period of four

3  months.  *Yanowitz*, 36 Cal.App.4th at 1059.

4          Here, the alleged adverse actions can hardly be described as frequent.

5  Plaintiff was transferred only twice, the transfers occurring approximately seven

6  years apart.  Fresenius's decision to not renew Plaintiff's contract was attendant

7  with his removal from the President of R&D position, and likewise was a one-off

8  act.  These were "isolated... employment decisions," in the parlance of *Richards*,

9  which were not connected either thematically or temporally.  In all, Plaintiff

10  complains of four adverse employment actions over the course of eight years, hardly

11  the "bi-weekly" or "steady" course of activities referenced by *Richards* and

12  *Yanowitz*.  The instant alleged adverse actions are a collection of individual and

13  isolated business decisions made by Fresenius at differing times over the course of

14  Plaintiff's career.  Plaintiff's evidence in regard to these adverse employment

15  actions is insufficient to establish a continuing act.

16          Next, Plaintiff argued that as President of Research and Development, he was

17  excluded from professional meetings at the direction of Mr. Powell, which was a

18  continuing course of conduct.  Plaintiff alleges that his systematic exclusion from

19  these meetings, over a course of years from 2005 to 2009, constituted an adverse

20  employment action, allegedly perpetrated in retaliation for Plaintiff's various

21  complaints of mistreatment.  It is undisputed, however, that Plaintiff was removed

22  as President of R&D as of April 1, 2009.  The latest date he could have been

23  excluded from meetings as President of R&D is April 1, 2009.  Plaintiff filed his

24  complaint with the DFEH on August 16, 2011, more than two years after his

25  removal from the position, and certainly outside the attendant one-year statute of

26  limitations.  While the continuing violation doctrine may subject an employer to

27  liability based upon adverse employment actions which occurred outside the statute

28  of limitations, at least one act within the alleged course of conduct must have

occurred within the statute in order for the conduct to be actionable. *Trovato v. Beckman Coulter, Inc.* 192 Cal.App.4th 319, 326 (2011). Absent an actionable retaliatory act within the statutorily mandated time period, the claim is time-barred by the provisions of Cal. Gov. Code 12960(d). *Id.* Even assuming that Plaintiff provided enough evidence for a reasonable jury to conclude that he was excluded from meetings, and that such exclusion constituted an adverse and continuous action, Plaintiff's claim still must fail because the alleged adverse course of conduct completely falls outside of the relevant statute of limitations under the FEHA.

In fact, only one of Plaintiff's claimed adverse actions actually fits inside the statute of limitations: his termination from the company. No reasonable jury, however, could find that the termination was a part of a continuous or frequent course of conduct. The termination was one, isolated employment decision, remote in time from other alleged adverse activities. Plaintiff testified that Fresenius's last adverse act before his termination was his transfer from the President of R&D position to the role of Special Advisor to Mr. Lipps. The transfer was effective April 1, 2009; the termination was effective August 21, 2010, *a full eighteen months later.* No reasonable jury could find that Fresenius's alleged adverse acts were frequent or continuous when there is an indisputable eighteen (18) month lapse in alleged adverse activity prior to the last alleged unlawful act. As such, Plaintiff has not provided sufficient evidence to show that Fresenius engaged in a frequent, adverse course of conduct. Plaintiff's continuing retaliation claim thus fails, and Fresenius is entitled to a judgment as a matter of law.

**E.    Plaintiff did not Present Sufficient Evidence to Demonstrate that the Alleged Course of Retaliatory Conduct did not Reach a Degree of Permanence**

Even assuming, *arguendo*, Plaintiff did demonstrate that the alleged adverse activities were similar in kind and sufficiently frequent, his appeal to the continuing violation doctrine still must fail under the third prong of the *Richards* and *Yanowitz* test. To invoke the continuing violation doctrine, Plaintiff must demonstrate that the

alleged unlawful course of conduct did not reach a degree of permanence outside the statute of limitations. *Yanowitz*, 36 Cal.App.4th at 1059; *Richards*, 26 Cal.App.4th 822. Put another way, Plaintiff must demonstrate that the alleged course of retaliatory conduct did not complete more than one year before the filing of his claim with the DFEH. *Id.* In this context, a degree of permanence is reached when the employer's alleged course of conduct (1) triggers an employee's awareness of and duty to assert his or her rights; and (2) makes clear that alleged mistreatment will not be remedied by the employer. *Richards*, 26 Cal.App.4th at 823.

As a matter of policy, the continuation doctrine is aimed at "preventing employees from being forced into bringing actions that are unripe for adjudication, and encouraging informal resolution of disputes." *Gardner*,838 F. Supp. 2d at 920. The doctrine is designed to protect a plaintiff who alleges "a series of subtle, yet damaging, injuries," where the plaintiff may be unaware that the pattern of activity may be actionable, or where legal action would be impractical or premature. *Yanowitz*, 36.Cal. App. 4th at 1055<u>1</u>. The doctrine does not apply, however, where a plaintiff alleges various adverse actions which were "separate, discrete events that were ripe for legal adjudication when they occurred." *Gardner*, 838 F. Supp. 2d at 919-920. Such discrete events, by their nature, achieve a degree of permanence such that a plaintiff should be aware that he has a duty to assert his rights under the FEHA. *Id.*; *see also Yanowitz*, 36 Cal. 4th at 1058-59 (stating that the continuing violation doctrine is aimed at a retaliatory course of conduct, rather than discrete acts of retaliation).

---

<u>1</u>*See also Richards*, 26 Cal.App.4th at 820-24 (course of adverse conduct in relation to an alleged failure to accommodate an employee's disability did not reach a degree of permanence where plaintiff was actively engaged in an interactive process within the statute of limitations. The court found that since the employer had not reached a final decision regarding the matter, and even left open opportunity for further negotiations, the employee was not on notice that he had a duty to assert his rights).

Plaintiff has not claimed that the alleged pattern of retaliatory acts was a series of subtle, yet damaging injuries as described in *Yanowitz*; rather, the charged adverse actions (termination, position transfers, etc.) were overt acts carried out by Fresenius under no pretense.  Plaintiff regarded his transfer to the President of R&D position in 2002 as retaliatory in nature *at the time of the transfer*.  He even submitted email and other written communications which confirmed his belief.  *See* JX0015.  The same is true for his transfer to the Special Advisor role in 2009 (JX0046).  Plaintiff was informed by Fresenius representatives that these actions were final in nature, putting him on notice that Fresenius regarded the matters as complete and would take no further steps to remedy the perceived wrong.  In other words, the actions achieved a degree of permanence.

In *Gardner*, the court found that an employer's decision to retire an employee and its multiple further decisions to deny reinstatement were "separate, discrete events that were ripe for legal adjudication when they occurred."  *Gardner*, 838 F. Supp. 2d at 920.  Since the plaintiff believed had suspicions that his employer had acted wrongfully, he "was on notice [that] his rights were being violated that his claim was ripe for adjudication." *Id.* Each of the rejections "had a degree of permanence which should [have] trigger[ed the] employee's awareness of and duty to assert his rights."  "Because [the d]efendant's actions had acquired a degree of permanence, the continuing violation doctrine [did] not apply."  *Id.* at 921. [2]

---

[2] *See also Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1042-43 (2002).  In *Cucuzza*, the employer responded to the plaintiff's complaints about mistreatment by offering her a transfer out of her division.  *Id.*  The court could "conceive of little that would be a more definitive denial of plaintiff's request… than an offer to transfer her out of the job altogether."  *Id.*  The court concluded that the plaintiff "should have known that further efforts to resolve the situation would be futile," and ruled that the adverse action acquired the requisite degree of permanence to forestall a continuing violation claim.  *Id.* The same principle is present in the instant matter: Plaintiff should have known that any alleged course of adverse conduct reached a degree of permanence once Fresenius offered Plaintiff a transfer to another department.  At that point, Fresenius had expressed its

Similarly, the alleged adverse actions in the present case were ripe for adjudication.    Plaintiff was on notice that he had the opportunity and duty to assert his rights in regard to the alleged adverse actions and Fresenius informed Plaintiff that its employment decisions were final.  The permanence of Fresenius's actions was only underscored by Plaintiff's unsuccessful written complaints to Fresenius regarding these matters, and Fresenius's refusal to changes its decisions.3 These matters were complete at the time they occurred; they were discrete acts.

Plaintiff had a duty to file an action in relation to these alleged adverse activities within the statute of limitations for FEHA claims.  He failed to do so. These untimely alleged violations of the law cannot be revived through a contrived claim of a continuing action.  In sum, Plaintiff alleged that Fresenius engaged in a systematic course of conduct aimed at retaliating against him over a period of eight years4; but, he failed to present sufficient evidence upon which a jury could find that Fresenius engaged in a continuing violation of any kind.  Without the crutch of his contrived continuing violation claim, Plaintiff's retaliation charge is threadbare and unsupported by reasonable evidence.  Fresenius is entitled to a judgment as a matter of law.

## IV.    PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO SUPPORT HIS CLAIM FOR FAILURE TO PREVENT RETALIATION IN VIOLATION OF THE FEHA

Plaintiff's next claim is that Fresenius failed to take adequate steps to prevent retaliation.  California Government Code section 12940(k) makes it unlawful "[f]or

---

unwillingness to further act toward ameliorating Plaintiff's perceived mistreatment.  The adverse course of conduct, if any, completed when Fresenius offered the transfers.

3See Do v. Cnty. of Los Angeles, 2011 WL 3667498, at *7 (Cal. Ct. App. Aug. 22, 2011) (employer's rejections of employee's requests for promotion acquired degree of permanence as soon as the decisions were made and communicated to plaintiff, "with [the] sense of permanence only heightened by the results of the plaintiff's unsuccessful grievances and appeals."

4A time period during which, Plaintiff received a substantial salary, significant bonuses, pay raises, interest free loans, and even gifts from the company.

an employer… to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."[5]  A successful claim for failure to prevent discrimination, however, requires a finding that discrimination actually occurred.  *Trujillo v. North County Transit District*,63 Cal. App. 4th at 284-287. "There's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred." *Id.* at 284. The same is true for cases involving an alleged failure to prevent retaliation: "to establish a claim for failure to prevent retaliation, a plaintiff must first establish the underlying retaliation."  *Trulsson v. Cnty. of San Joaquin Dist. Attorney's Office*, 2014 WL 4748117, at *8 (E.D. Cal. Sept. 23, 2014); *see also Abney v. Bd. of Trustees of the California State Univ.*, 2013 WL 2241922, at *11 (Cal. Ct. App. May 20, 2013) ("without retaliation, [the defendant] could not be liable for failure to prevent retaliation.").

As explored in Section III, *supra*, Plaintiff's retaliation claim lacks legal and factual support.  Equally as important, the evidence showed that Fresenius had antidiscrimination policies in place and fully investigated his claims.  There can be no liability for failure to prevent retaliation when an employer takes reasonable steps to prevent retaliation, including, e.g., conducting prompt investigation of the underlying claims, promulgating anti-discrimination and anti-retaliation policies, or implementing procedures to handle complaints and grievances. (*Cal. Fair Employment & Housing Com. v. Gemini Aluminum Corp.,* 122 Cal. App. 4th 1004, 1025 (2004); *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002)).  Plaintiff admitted that Fresenius took these exact

---

[5]This provision has been interpreted to include an action for failure to prevent retaliation. *See e.g. Taylor v. City of Los Angeles Dept. of Water and Power*, Cal.App.4th 1216, 1240 (2006) ("In accordance with… the fundamental public policy of elimination of discrimination in the workplace under the FEHA, we conclude that retaliation is a form of discrimination actionable under [Gov. Code] section 12940, subdivision (k).")

actions.  Thus, Plaintiff failed to present evidence upon which a reasonable jury could find that Fresenius failed to prevent retaliation.  Fresenius is entitled to a judgment as a matter of law in relation to Claim Two.

**V.    PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

In his third cause of action, Plaintiff alleges that his termination contravened fundamental public policy.  To succeed in his claim, Plaintiff must prove that a violation of public policy was a substantial motivating factor for his termination. *See* CACI No. 2430.  Plaintiff claims that Fresenius violated the public policy embodied in the FEHA and alleges that the violation was a substantial motivating factor for his termination[6].  D.I. 34 at 15:13-16. Plaintiff admits that his retaliation, failure to prevent retaliation, and wrongful termination claims are "factual[ly]… essentially indistinguishable."  D.I. 78 at 13-14.

"[W]hen the constitutional provision or statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action. Stated another way, the common law cause of action cannot be broader than the constitutional provision or statute on which it depends, and therefore it presents no impediment to employers that operate within the bounds of law." *Dutra v. Mercy Medical Center Mt. Shasta,* 209 Cal.App.4th 750, 756 (2012) (citations omitted). Thus, the same limitations and shortcomings which define and defeat Plaintiff's retaliation claim apply equally to his wrongful termination claim.  As explored in Section III, *supra*, Plaintiff failed to provide sufficient evidence for a reasonable jury to find that his termination of employment was causally linked to protected

---

[6] Plaintiff has not identified, either in pleadings or in testimony, any other public policy as a basis for the wrongful termination action.

activity7, or to find that he timely exhausted all administrative remedies.  Plaintiff

failed to present evidence upon which a reasonable jury could find in his favor.8

Fresenius is entitled to a judgment as a matter of law in relation to Claim Three.

## VI.  PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH ANY CONTRACTUAL VIOLATION OR BREACH OF CONTRACT

In addition to his various causes of action arising out of the FEHA, Plaintiff

alleges a breach of contract claim.  Plaintiff asserts that Fresenius was contractually

obligated to pay him two years' worth of severance pay at the time that he was

terminated from the company.   To support the claim, Plaintiff presented the 2003

employment contract between Fresenius and himself (JX0001).  Plaintiff cited a

contractual provision which allows for payment of two years' worth of severance

pay in the event that Plaintiff's employment with the company was terminated.  *See*

JX0001 at §6(a)(iv).  The contract was for a term of one year, automatically

renewing each year unless either party gave thirty (30) days' notice of their intent

not to renew.  *See* JX0001 at §2. Fresenius properly notified Plaintiff of its intent to

not renew the contract in February of 2009, more than 30 days' prior to the

_____

7The lack of temporal proximity between Plaintiff's alleged protected activity and his termination from Fresenius also precludes a reasonable jury from finding that the alleged violation of public policy was a "substantial motivating factor" for the termination.

8To the extent Plaintiff's claim for wrongful termination is predicated on Fresenius's decision to not renew the contract, the claim must fail as a matter of law.  Such a decision cannot serve as a basis for a wrongful termination action because it is not akin to a termination. *See, Touchstone Television Productions v. Superior Court*, 208 Cal.App.4th 676, 682 (2012) (stating "[t]hat [defendant]'s decision not to renew [plaintiff's] contract for an additional season might have been influenced by her complaints about an unsafe working condition... does not change our conclusion in light of the principle that a decision not to renew a contract set to expire is not actionable in tort."); *Landry v. Sycamore Networks, Inc.,* 76 Mass. App. Ct. 1104, 918 N.E.2d 882 (2009) (stating that the "failure to renew an employment contract after its expiration is not an actionable tort" and "summarily reject the plaintiff's claim of wrongful termination because the employment agreement was for a term of years that expired and was not renewed").Moreover, his transfer to the Senior Advisor role in April 1, 2009 was not a termination.  Even if it could be construed as one, the claim is time barred.  This action was filed in August 2011, over two years later, well outside the statute of limitations for a wrongful termination claim. *See Barton v. New United Motor Mfg., Inc.*, 43 Cal. App. 4th 1200, 1209 (1996).

1    automatic renewal date of April 1.  *See* JX0063.  Plaintiff was terminated from
2    Fresenius eighteen (18) months after Fresenius informed him of its decision to not
3    renew the contract. *See also* JX0104 (informing Plaintiff that his employment was
4    terminated effective August 21, 2010).

5         In Massachusetts9, "a contractual relationship is necessary to bring a claim
6    for breach of contract." *Hayden v. Hayden*, CA 921539, 1993 WL 818823 (Mass.
7    Super. Dec. 13, 1993) (citing *Jurgens v. Abraham,* 616 F. Supp. 1381, 1387
8    (D.Mass.1985)).  A "lack of any contractual relationship…preclude[s] a successful
9    breach of contract claim."  *Liberty Mut. Ins. Co. v. Murad*, 1992 Mass. App. Div.
10   163 (Dist. Ct. 1992); *see also Jurgens v. Abraham*, 616 F. Supp at 1387.  "Where
11   the existence of a contract is in issue, the burden is on the [party seeking
12   performance]."  *JPMorgan Chase & Co., Inc. v. Casarano*, 81 Mass. App. Ct. 353,
13   356, 963 N.E.2d 108, 111 (2012) (citing *Canney v. New England Tel. & Tel. Co.,*
14   353 Mass. 158, 164, 228 N.E.2d 723 (1967). Thus, to be successful in his breach of
15   contract claim, Plaintiff must demonstrate that there was a valid and existing
16   contractual agreement in place at the time of the alleged breach.  Since the
17   Plaintiff's termination occurred more than a year after the non-renewal, Plaintiff
18   necessarily must prove that the contractual relationship survived Fresenius's non-
19   renewal decision.

20        Contractual obligations, however, do not survive the non-renewal of a
21   contract.  *Scott v. Boston Hous. Auth.*, CIV.A. 88-5555-E, 2003 WL 21960316
22   (Mass. Super. July 14, 2003) *aff'd,* 64 Mass. App. Ct. 693, 835 N.E.2d 278 (2005)
23   (*Scott*).  In *Scott*, the plaintiff was successful in his claim that his employer's
24   decision to refrain from renewal of an employment agreement was based on
25   unlawful age discrimination.  After receiving a judgment, Scott filed a motion for
26   
27   _____
28   9 The breach of contract claim is governed by Massachusetts law in accordance with the
     explicit agreement in the contractual provisions.  *See* Exh. No. 1, page  JX0001-5,
     paragraph 13.

1  pre-judgment interest.  *Id.*  Scott argued that since the case sounded in contract, he

2  was entitled to pre-judgment interest calculated from the time of the breach.  *Id.*

3  The court ruled against Scott, finding that "the original employment agreement was

4  fully performed and the [defendant] owed no contractual obligation to renew Scott's

5  employment.  And in the absence of a contractual obligation there can be no

6  breach."  *Id.*  On appeal, the Appeals Court of Massachusetts "affirm[ed] the

7  decision of the Superior Court in all respects," adding that there "was not a breach

8  of any contractual obligation. Scott's original employment agreement was fully

9  performed, and the [defendant] was under no contractual obligation to renew his

10  employment."

11  *Scott*, 64 Mass. App. Ct. at 693-696.

12        Similarly, Fresenius's contractual obligations ended at the time the agreement

13  expired.  Cessation of the 2003 Employment Agreement by non-renewal was

14  explicitly contemplated by the parties, *see* JX0001 at §2 , and the parties made no

15  provision that the severance package option would extend beyond the natural

16  expiration of the agreement.  Fresenius properly executed the non-renewal in

17  accordance with the contractual provisions.  The non-renewal effectively ended the

18  contractual relationship between Plaintiff and Fresenius and Fresenius no longer

19  owed Plaintiff any contractual obligation, let alone an obligation to pay two years'

20  worth of severance pay.  Plaintiff's claim for a breach of contract which occurred

21  outside the contractual time period cannot be legally sustained.

22        To the extent Plaintiff asserts that the non-renewal decision was equivalent to

23  a termination, his claim must also fail.  By law, a company's decision to not renew

24  an employee's contract is not akin to a termination.  *See Landry*, 76 Mass. App. Ct.

25  at 918(stating that the "failure to renew an employment contract after its expiration

26  is not an actionable tort" and "reject[ing] the plaintiff's claim of wrongful

27  termination because the employment agreement was for a term of years that expired

28  and was not renewed").  But even if it was possible for a non-renewal decision to be

equated to a termination, Plaintiff's own testimony shows that he was not fired at the expiration of the contract.  Plaintiff testified that he continued to receive compensation for his work for Fresenius after his transfer from the R&D position to the Special Advisor role.  Plaintiff continued to receive the same salary (and later an increased salary) paid by the same company in the same manner.  *See also* JX0148, JX0149, JX0150, and JX0151 (paystubs showing that Plaintiff was paid by the same entity after the cessation of the contract).If Plaintiff is truly claiming that he was terminated from one Fresenius entity at the expiration of the contract, and then subsequently rehired by a different Fresenius entity, he has not provided any documentation or testimony to support the allegation.  No reasonable jury could find a contractual duty was owed or that there was a breach of said duty.  Fresenius is entitled to a judgment as a matter of law in regard to Claim Four.

## VII. PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENE TO ESTABLISH A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Finally, Plaintiff claims that Fresenius violated the implied covenant of good faith and fair dealing when the company terminated him.  In this regard, Plaintiff makes two allegations: First, Plaintiff argues that Fresenius breached the implied covenant of good faith and fair dealing in the 2003 employment agreement.  Second, Plaintiff argues (in the alternative) that his termination violated the covenant of good faith and fair dealing attendant with his at-will employment.

### A. There Was No Breach of the Implied Covenant of Good Faith and Fair Dealing in Conjunction with the 2003 Employment Agreement

Plaintiff alleges that his breach of contract claim and his contractual breach of the implied covenant claim are "essentially indistinguishable." D.I. 78 at 23:6-8.  "[C]laims for breach of the implied covenant of good faith and fair dealing[, however,] are distinct from simple breach of contract claims and require additional factual allegations of unfairly leveraging the contract terms for undue economic

advantage." *Christensen,* 360 F. Supp. 2d at 229; *cf. Cherick Distributors, Inc. v. Polar Corp.,* 41 Mass. App. Ct. 125, 127 (1996).

As detailed above (*see* Section VI, *supra*) Plaintiff's breach of contract claim must fail as a matter of law: Plaintiff was not terminated from Fresenius during the contractual term and Fresenius rightfully (in accordance with the terms of the April 2003 agreement) exercised its option not to renew Plaintiff's employment contract.  Additionally, Plaintiff presented no evidence that Fresenius's non-renewal decision was made to reap some undue economic advantage.  Fresenius was authorized by contract to take such action and Plaintiff's separation only occurred after Fresenius attempted to negotiate a new contract with him.

Though an "implied covenant of good faith and fair dealing [is] implicit in all Massachusetts contracts," *Harrison v. Net Centric Corp.,* 744 N.E.2d 622, 629 (Mass. 2001), contracts must still be enforced as written because the "covenant [of good faith and fair dealing] cannot be used to supply contract terms that were not negotiated or provided."  *Canovas v. Univ. of Massachusetts Med. Sch.,* 83 Mass. App. Ct. 1123, 985 N.E.2d 413 (2013).  Under the plain terms of the contract, Fresenius had no obligation beyond the non-renewal of the April 2003 employment agreement to pay 2 years severance and thus achieved no economic advantage by terminating Plaintiff in August 2010; doing so did not relieve the company of any economic burden or garner it any improper income.  Thus, there was no breach of the implied covenant in the 2003 agreement.

### B.   There Was No Breach of the Implied Covenant of Good Faith and Fair Dealing in Conjunction with Plaintiff's At-Will Employment

Plaintiff's at-will argument is similarly flawed.  At-will employment agreements, like employment contracts, contain "an implied covenant of good faith and fair dealing, which limits the conditions under which employment may be terminated." *Wright v. Shriners Hosp. for Crippled Children,* 412 Mass. 469, 477, 589 N.E.2d 1241, 1246 (1992).  But Massachusetts courts "have limited the

1    application of this exception to cases in which an employer fires an employee and

2    thereby deprives him or her of bonuses, commissions, or wages." *Id.* Thus, to

3    succeed in his claim, Plaintiff must prove that Fresenius acted in bad faith to

4    "deprive [him] of the fruits of labor already substantially earned..." *Christensen v.*

5    *Kingston Sch. Comm.*, 360 F. Supp. 212, 226, *supra.*

6         Plaintiff continued to receive a high salary and bonus from Fresenius after the

7    contract expired and all the way up to his termination.  The terms of the written

8    contract expired, so Plaintiff was not entitled to receive the benefits of that contract

9    from April 1, 2009 until his termination on August 21, 2010. In his Memorandum of

10   Contentions of Fact and Law, D.I. 78 at 23:12-24:8, Plaintiff relied upon *Fortune v.*

11   *Nat'l Cash Register Co.* to support his breach of the implied covenant claim.  373

12   Mass. 96, 364 N.E.2d 1251 (1977) (holding that a company had breached an implied

13   covenant of good faith in the contract by terminating an at-will employee when that

14   employee was on "the brink" of making a sale that would garner him a considerable

15   commission).   His reliance on *Fortune*, however, is misplaced.  *Fortune* and its

16   progeny have been found to "provide that an employer is accountable to a

17   discharged employee for unpaid compensation if the employee was terminated in

18   bad faith and the compensation is clearly connected to work already

19   performed." *Harrison v. Net Centric Corp.*, 744 N.E.2d 622, 629 (Mass. 2001); *see*

20   *also, Cort v. Bristol–Myers Co.*, 431 N.E.2d 908 (Mass. 1982); *Gram v. Liberty*

21   *Mut. Ins. Co.*, 429 N.E.2d 21 (Mass. 1981); *Sargent v. Tenaska, Inc.*, 108 F.3d 5, 8

22   (1st Cir. 1997).  Plaintiff has not claimed that Fresenius owes him compensation

23   "clearly connected to work already performed." *Id.*  Plaintiff's only claim is that he

24   was entitled to the two year severance contractual provision and not that he was

25   deprived of compensation owed to him for past services rendered.  *See Saxonis v.*

26   *City of Lynn*, 62 Mass. App. Ct. 916, 918, 817 N.E.2d 793, 797 (2004) (holding that

27   plaintiff's "claim for breach of the covenant of good faith and fair dealing cannot

28

1   succeed as her complaint does not allege that her termination served to deprive her
2   of compensation owed for past performance").

3        Thus, Plaintiff did not provide sufficient evidence upon which a reasonable
4   jury could conclude that he is entitled to relief.  Plaintiff's cause of action regarding
5   an alleged breach of the implied covenant of good faith and fair dealing fails as a
6   matter of law, and Fresenius is entitled to a judgment on Claim Five.

7   **VIII.  PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO
8           ESTABLISH THAT HE IS ENTITLED TO PUNITIVE DAMAGES**

9        To be successful in a claim for punitive damages, a plaintiff must prove by
10  clear and convincing evidence that the defendant engaged in "malice, oppression, or
11  fraud10." See Cal. Civ. Code § 3294; *Brandon v. Rile Aid Corp., Inc.*408 F.Supp.2d
12  964, 982 (E. Cal. 2006) ("To recover punitive damages under this provision,
13  [plaintiff] must establish by clear and convincing evidence that [defendant] acted
14  with oppression, fraud, or malice toward her").  "Clear and convincing" evidence
15  must be "sufficiently strong to command the unhesitating assent of every reasonable
16  mind." *See Mathieu v. Norrel Corp.,* 115 Cal.App.4th 1174, 1190 (2004).  Punitive
17  damages are never awarded as a matter of right, are disfavored by the law, and
18  should be granted with the greatest of caution and only in the clearest of cases.
19  *Henderson v. Security Pac. Nat. Bank*, 72 Cal. App. 3d 764, 771 (1977).

20

21   _____

22  10The statute defines "malice" as "conduct which is intended by the Defendant to cause
23  injury to the Plaintiff or despicable conduct which is carried on by the Defendant with a
    willful and conscious disregard of the rights and safety of others." Cal. Civ. Code §
24  3294(c)(1). It defines "oppression" as "despicable conduct that subjects a person to cruel
    and unjust hardship and conscious disregard of that person's rights." Cal. Civ. Code §
25  3294(c)(2).  It defines "fraud" as an "intentional misrepresentation, deceit, or concealment
    of a material fact known to the defendant with the intention on the part of the defendant of
26  thereby depriving a person of property or legal rights or otherwise causing injury."  Cal.
    Civ. Code § 3294(c)(3).

27

28

                    27      Defendant's Motion for Judgment as a Matter of Law
                            Case No.: SACV12-1580 DOC (JPRx)

1   Omitted from Plaintiff's case is a legally sufficient evidentiary basis

2   establishing that Plaintiff is entitled to an award of punitive damages.  As outlined

3   above, Plaintiff's FEHA claims fail and he cannot recover punitive damages on a

4   contract claim<u>11</u>.  Moreover, Plaintiff has offered no evidence of malice, fraud, or

5   oppression in relation to any of his causes of action.  Thus, Plaintiff's claim for

6   punitive damages must fail as a matter of law.

7   **IX.   CONCLUSION**

8   For the foregoing reasons, Defendant Fresenius Medical Care North America

9   respectfully requests that this court grant its motion for judgment as a matter of law

10   as to all of Plaintiff's claims and enter judgment in Fresenius's favor.

11

12   Date: January 16, 2015          Respectfully submitted,

13

14                                   FISH & RICHARDSON PC

15                       By:   /s/Juanita R. Brooks
16                             Juanita R. Brooks, Esq.
17                             Attorney for Defendant,
                               FRESENIUS MEDICAL CARE NORTH
18                             AMERICA

19                                   DAMIANI LAW GROUP APC
20
21                       By:   /s/Lisa J. Damiani
22                             Lisa J. Damiani, Esq.
                               Attorney for Defendant,
23                             FRESENIUS MEDICAL CARE NORTH
                               AMERICA
24
25
26
27   _____
28   11*See Palmer v. Ted Stevens Honda, Inc.*  193 Cal.App.3d 530, 536 (1987); *DeRose v.
     Putnam Mgmt. Co.*, 496 N.E.2d 428, 432 (Mass. 1986).

1

## **CERTIFICATE OF SERVICE**

2
3
4
5
6

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 16, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5-3.3.  Any other counsel of record will be served by U.S. mail or hand delivery.

7
8

By: */s/ Juanita R. Brooks*
      Juanita R. Brooks

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28